SCHROEDER and another, Respondents, vs. CARROLL, Appellant.

*January 13—April 5, 1927.*

*Corporations: Officers: Duty of truthful disclosure to stockholders: Fraud: Reliance on statements by stockholder: Value of stock: Evidence.*

1. The secretary and manager of a corporation, knowing of negotiations for the sale of the entire holdings of the company either by the purchase of its corporate assets, its stock, or of a controlling interest therein, must make truthful disclosure of facts within his knowledge to a stockholder specifically inquiring as to the value of the stock. [Rule in *McMynn v. Peterson,* 186 Wis. 442, and *Bray v. Jones,* 190 Wis. 578, referred to and followed.] p. 463.

2. In an action for damages sustained by the stockholder because of alleged fraudulent representations made by the secretary in purchasing his stock, the court properly changed the answer to the question as to whether plaintiff should have discovered the falsity of the statements before transferring the stock from "Yes" to "No," where there was no evidence that plaintiff, by the most diligent inquiry, could have discovered the falsity of the statements. p. 463.

3. Stockholders have a right to rely on the truthfulness of the statements of a corporate officer in answer to an inquiry as to the value of the corporate stock. p. 463.

4. A finding of the jury as to the actual value of the stock as a basis for determining damages, if sustained by the evidence, is not affected by the finding of a lesser amount as the book value of the stock. p. 463.

APPEAL from a judgment of the circuit court for Juneau county: E. W. CROSBY, Circuit Judge. *Affirmed.*

Action to recover damages sustained by plaintiffs because of the fraudulent representations alleged to have been made by the defendant in the purchase from them of thirty-seven and one-half shares of common stock held by them in the Mauston Electric Service Company, a corporation, hereinafter called the company, having outstanding 1,055 shares of common stock held by eleven persons. The defendant had for some time been the secretary, manager, and a di-

rector of the company and held 255 shares of common stock. Troy and Winsor, two of the other directors, had respectively 155 and 255 shares of common stock; Curran brothers, one of whom was a director, had 255 shares.

Plaintiffs claim that the defendant knew at the time he bought their stock that negotiations for the sale of the company to the Wisconsin Power & Light Company, hereinafter called the power company, were pending at a price of $145 per share, and that he fraudulently withheld that fact from them and purchased their stock at $93 per share and a short time thereafter sold it to the power company for $143 per share.

The issues were submitted to a jury who entered this verdict:

"*Q.* 1. Did the defendant, *Jerry Carroll,* state to the board of directors of the Mauston Electric Service Company on the 13th day of January, 1925, that he had been to Madison some time prior to that, and in a conversation with some of the officers of the Wisconsin Power & Light Company they had asked him if this company would sell their holdings to the Wisconsin Power & Light Company, as they were in the market to buy? *A.* Yes.

"*Q.* 2. Did *Jerry Carroll,* on the 13th day of January, 1925, say that the Wisconsin Power & Light Company was desirous of buying the concern, meaning the Mauston Electric Service Company? *A.* Yes.

"*Q.* 3. Was it agreed between the members of the board of directors present at the meeting of January 13, 1925, while *Mr. Carroll* was present, that we will stick together and not one of us sell out unless the entire stock was taken? *A.* Yes.

"*Q.* 4. Did the plaintiffs, or either of them, on the 18th day of February, 1925, the day that *Carroll* purchased their stock, say to *Carroll,* 'We have had this stock twenty years, and ten years it has paid us no dividends. If there is anything in sight where the stockholders will receive a benefit in any way, shape, or manner, we are entitled to as much as any of them; you are on the inside and know these things,' or words of similar import? *A.* Yes.

"*Q.* 5. If you answer question No. 4 'Yes,' then answer this question: Did *Carroll* reply to said inquiry, 'There is absolutely nothing,' or words of similar import? *A.* Yes.

"*Q.* 6. If you answer question No. 5 'Yes,' then answer this question: Were the plaintiffs induced to transfer their stock to the defendant because of their belief in and reliance upon the truth of such statement? *A.* Yes.

"*Q.* 7. If you answer question No. 5 'Yes,' then answer this question: Was such statement false? *A.* Yes.

"*Q.* 8. If you answer question No. 7 'Yes,' then answer this question: Ought the plaintiffs, in the exercise of such care as is ordinarily exercised by persons of their education, intelligence, and experience, have discovered the falsity of such statement before making the transfer? *A.* Yes.

"*Q.* 9. Did the defendant *Carroll* buy the stock of the plaintiffs for the purpose of getting a controlling interest of the stock for his own personal interest that he might get control of the stock as an individual? *A.* No.

"*Q.* 10. What was the book value of the stock in the Mauston Electric Service Company on the 18th day of February, 1925, the day plaintiffs' stock was sold? *A.* $84.185.

"*Q.* 11. What was the actual value of the stock in the Mauston Electric Service Company on the 18th day of February, 1925? *A.* $143."

The court changed the answer to question 8 from "Yes" to "No" and entered judgment for plaintiffs for $1,862.50 with interest and costs. The defendant appealed.

For the appellant there were briefs by *Grady, Farnsworth & Walker* of Portage, and oral argument by *Daniel H. Grady.*

For the respondents there was a brief by *McFarlane & Loomis* of Mauston, and oral argument by *O. S. Loomis* and *J. A. McFarlane.*

The following opinion was filed February 8, 1927:

VINJE, C. J. Counsel for appellant earnestly contend that the vital question for decision in this case is whether an officer of a corporation who has given an option on his stock must disclose that fact in a negotiation by him for the pur-

chase of stock from another stockholder. We do not think the question for decision lies in that narrow field. The jury found upon evidence which sustains the finding that to the knowledge of the defendant but unknown to plaintiffs negotiations were pending for the sale of the entire holdings of the company, either by a purchase of its corporate assets, its stock, or of such a majority interest therein that the purchaser could control it. The whole stock was in fact bought by the power company. Under such circumstances, upon specific inquiry being made by a stockholder to an officer of the corporation as to the value of the stock the latter must make a truthful disclosure of the facts within his knowledge. *McMynn v. Peterson,* 186 Wis. 442, 201 N. W. 272; *Bray v. Jones,* 190 Wis. 578, 209 N. W. 675.

The verdict discloses the issues litigated, and we do not deem it necessary to set out or discuss the evidence sustaining the answers on the fraud issue further than to state that they are sustained by the evidence. That being so, the case as to fraud is ruled by the case of *McMynn v. Peterson, supra.* The latter case and the *Bray Case* so fully discuss the questions of fraud under the same or similar circumstances that we consider it unnecessary to now rediscuss them.

The court properly changed the answer to question number 8 from "Yes" to "No." The case is barren of evidence showing that plaintiffs could, by the most diligent inquiry, have discovered the falsity of the statements made by the defendant. Besides, they had a right to rely upon their truthfulness. If the manager and secretary of the company did not know of any fact affecting the value of the stock, who would know?

The finding as to the book value of the stock, where the actual value is found, cannot affect the latter finding if there is evidence to sustain it. In the present case it was shown that defendant, a short time before the purchase of the stock,

was of the opinion that it was worth $150 per share. There was also other evidence disclosed by the books of the company and otherwise tending to sustain the value of the stock found by the jury. It was sold about a month later to the power company for $143 per share.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on April 5, 1927.