NICHOL, Respondent, vs. SENSENBRENNER, Appellant.

*September 10, 1935—February 4, 1936.*

166

For the appellant there were briefs by *Quarles, Spence & Quarles* of Milwaukee, attorneys, and *J. V. Quarles* and *Arthur Wickham*, both of Milwaukee, and *Frank B. Keefe* of Oshkosh of counsel, and oral argument by *Mr. J. V. Quarles* and *Mr. Wickham*.

For the respondent there were briefs by *Benton, Bosser, Becker & Parnell* of Appleton and *Harold M. Wilkie* of Madison, attorneys, and *D. K. Allen* of Oshkosh of counsel, and oral argument by *Mr. Wilkie* and *Mr. Homer Benton*.

The following opinion was filed December 3, 1935:

MARTIN, J.    Appellant's first, fourth, fifth, and sixth assignments of error will be considered collectively.   They are:

(1) The court erred in failing to direct a nonsuit.

(4) The court erred in failing to direct a verdict in favor of defendant.

(5) The court erred in failing to order judgment for defendant *non obstante veredicto*.

(6) The court erred in failing to set aside the verdict and grant a new trial.

The issues thus raised are simple questions of fact and the proper application of the legal principles involved.   It may be helpful, both as to a better understanding of the facts and the legal questions involved, to supplement the foregoing summary of the findings to the questions of the special verdict which the trial court permitted to stand.

The plaintiff's father, Peter R. Thom, prior to his death in 1920, had been for many years a personal friend of and closely associated with the defendant in the Kimberly-Clark Company.   He was a substantial stockholder, a director, and general superintendent of said company.   The plaintiff inherited from her father four hundred and sixty-eight shares of the common stock of no par value and two hundred and

thirty-four shares of the preferred stock of the Kimberly-Clark Company. Shortly after her father's death, she left Appleton and later went to live in Detroit, Michigan, where she and her husband resided at the time of the sale of the stock in question.

The defendant for upwards of forty years was connected with the Kimberly-Clark Company, and in 1926 and prior he was a director, the executive vice-president, and general manager. He was personally acquainted with the members of Peter Thom's family, knew that the plaintiff and her brother Edgar had each inherited substantial amounts of Kimberly-Clark Company stock from their father. The business of Kimberly-Clark Company, which had its beginning in 1872, grew from a small business to a very large organization, which in 1926 had an authorized capital stock issue outstanding of fifty thousand shares of preferred stock of a par value of $100 per share, and one hundred thousand shares of common stock of no par value. It owned and maintained, either directly or through subsidiary companies which it controlled, other enterprises consisting of, and among others, different mills and timber holdings. There are only fifty-four stockholders, nearly all living within a radius of twenty-five miles of Neenah. The shares of the company were largely held by those immediately connected with the management of the company. The stock had never been listed on any exchange. No dividends were declared or paid on the common stock from 1922 to May 1, 1926, on which latter date a dividend of one and one-half per cent was declared and paid.

It was the practice of the officers not to give out to the stockholders any printed statement of the financial affairs of the company, but such statements were furnished, read, and commented upon at the annual meeting.

Among the subsidiary companies controlled by the Kimberly-Clark Company was Cellucotton Products Company

(later changed to Kotex Company), a Wisconsin corporation, organized in 1920 with an authorized capital stock of five thousand shares, par value $100 each, of which three thousand shares were issued and outstanding. The Kimberly-Clark Company owned two thousand six hundred and eighty-five shares of this outstanding stock. Six individuals, all connected with the Kimberly-Clark Company, owned the remaining three hundred and fifteen outstanding shares. The value of Kimberly-Clark's interest in Kotex Company was carried on the books at $268,500. The Cellucotton Products Company's (Kotex) earnings were promoted by extensive advertising. During the years 1921, 1922, and 1923, this company showed a total loss of $132,061.96. The profits for the years 1924, 1925, and 1926, amounted to $2,599,912.19. The earnings did not appear from the Kimberly-Clark Company books or statements, nor was the proportionate part of these earnings belonging to Kimberly-Clark Company shown by its books or statements. Defendant testified that he knew the books of Kimberly-Clark Company did not show the earnings of Kotex, and that information had not been given to plaintiff and other stockholders of such earnings; that he was familiar with the gain in earnings in the year 1925 and with the rate of increase in 1926.

The plaintiff never attended a stockholders' meeting. Her brother, Edgar Thom, attended the annual stockholders' meeting in January, 1926. Before leaving Detroit to attend the meeting, he and plaintiff had a talk during which she asked him to get any information he could about the stock. She did not know the value of the stock and requested her brother, Edgar, to get information for her. She did not know what the earnings of Kimberly-Clark Company or Kotex were. Edgar knew that Kotex was a company in which Kimberly-Clark Company held controlling stock.

There was available at the annual stockholders' meeting a balance sheet of Kimberly-Clark Company to which was at-

tached a list of the stocks held by the Kimberly-Clark Company and in this schedule Cellucotton Products Company (Kotex) was listed at $268,500. The balance sheets and profit and loss statements contained no information as to the earnings of Cellucotton Products Company.

Following adjournment of the annual meeting, defendant invited Edgar Thom into his office, and had a talk with him about the stock held by members of the Thom family, and requested that if any of them proposed to sell, to first offer the stock to him or the company. Edgar testified that he asked defendant how Kotex was progressing, to which inquiry defendant replied, in substance, that the earnings of Kotex were small, due to heavy advertising expense, or words to that effect. "He did not tell me what the earnings were." When Edgar returned to Detroit he reported to plaintiff that the earnings of Kotex were cut down because of heavy advertising expense.

On September 8, 1926, the articles of incorporation of Cellucotton Products Company were amended to change the corporate name to Kotex Company, and increasing the number of shares from five thousand par $100 each, to fifty thousand shares of no par value, according to which plan Kimberly-Clark Company was to receive by even exchange for the two thousand six hundred and eighty-five shares it then owned, forty-four thousand seven hundred and forty-nine new shares of the no-par-value stock.

It appears that on or about September 23, 1926, while defendant and some of his codirectors of the Kimberly-Clark Company were at Philadelphia, they received from a group of financially responsible men an offer of $15,000,000 for Kotex Company. The defendant and one of his codirectors in returning home stopped at Chicago to see a Mr. Lasker and a Mr. Pierce, two of the men who had made the offer of $15,000,000 for Kotex Company in the meeting at Phila-

delphia. Defendant testified that he found the men serious as to their offer, and that they were willing to buy a part of Kotex on the basis of $15,000,000, permitting Kimberly-Clark Company to sell out a part on that basis without losing control; that he considered the offer of great importance as affecting the value of Kimberly-Clark Company stock; that he knew they were men of large resources and could readily carry through the deal. It appears that defendant then arranged with Messrs. Lasker and Pierce to attend a meeting to be held at Neenah on October 8, 1926, to work out details. They were to acquire a four-fifteenths interest in Kotex Company for $4,000,000.

It further appears that upon defendant's return to Neenah he telephoned to an acquaintance at Detroit asking him to get someone to secure an offer from Edgar Thom and Lois Thom Nichol on their stock in the Kimberly-Clark Company and to report back to him. He instructed Mr. Bitting, his acquaintance at Detroit, that he did not want his name to appear in the transaction. The stock, if purchased, was to be put in the name of another person. Defendant said he telephoned Mr. Bitting because he was in a hurry. Mr. Bitting secured the services of a representative of Paine, Webber & Company at Detroit to secure an offer from the plaintiff and her brother, Edgar, on their stock. An offer was obtained from Edgar Thom about October 9, 1926, at a price of $165 per share. This offer was communicated to the defendant, who immediately instructed the representative of Paine, Webber & Company to accept it and procure the stock. On or about November 6, 1926, an offer was procured from the plaintiff on one hundred shares of her stock at a price of $250 per share, which offer was immediately accepted by the defendant. The one hundred shares of the plaintiff's stock were transferred on the books of the company to Paine, Webber & Company on November 8, 1926. The stock was

actually acquired from plaintiff on November 6, 1926. On November 16, 1926, the stock was transferred again on the books of the company to Walter Kasten of Milwaukee, and finally transferred to the defendant on December 2, 1926.

It appears that in 1925 defendant had some correspondence with Edgar Thom relative to acquiring some of his stock in the Kimberly-Clark Company, at which time Mr. Thom offered to sell to the defendant some of his stock at $125 per share, to which offer defendant replied, in substance, that he was not interested in purchasing at that figure, but that if Edgar wanted to offer his stock for less than $125 to let defendant know first.

The defendant testified that the plaintiff and her brother, Edgar, did not know of the pending deal for the sale of a four-fifteenths interest in Kotex Company for $4,000,000; that he purposely concealed his identity in the negotiations with the plaintiff and her brother so they would not suspect that something important had happened affecting the value of their stock; that he knew if the deal went through the stock would be worth more than $250 a share, and that he wanted to get the stock as cheap as he could. It appears further that at the meeting held at Neenah on October 8, 1926, Messrs. Lasker and Pierce were present with their counsel with defendant and his counsel, and work was commenced on plans for the reorganization of Kotex Company, the formation of a new corporation to be organized under the laws of the state of Delaware, and the organization of a committee representing the stockholders of both Kimberly-Clark Company and Kotex Company to serve the stockholders of both companies under a certain deposit agreement which contemplated, as a part of the reorganization plan, that the Kimberly-Clark Company may distribute to and among its common stockholders its stock holdings in the Old Kotex Company. The defendant served as a member of such com-

mittee under the deposit agreement which bears date as of November 1, 1926.

The plaintiff as a stockholder in the Kimberly-Clark Company had a *pro rata* interest, on the basis of her stock holdings, in the stock of the old Kotex Company which was owned and held by the Kimberly-Clark Company. The deposit agreement authorized the committee, of which defendant was a member, to exchange each share of common stock of old Kotex corporation for not to exceed eight tenths of a share of preferred stock, or four and four-tenths shares of common stock of the new corporation. It provided further that the committee could authorize the issuance of not to exceed $4,000,000 of second preferred, and could make it convertible into common stock. No information was given to plaintiff relative to the plan for reorganization of Kotex Company, nor as to any of the provisions of the deposit agreement, until after defendant had acquired the one hundred shares of her stock of the Kimberly-Clark Company.

The jury found:

(1) Fraudulent concealment as to identity;

(2) Fraudulent concealment of vital information as to Kotex negotiations;

(3) Fraudulent concealment of the reorganization plan.

In *Bray v. Jones,* 190 Wis. 578, 588, 209 N. W. 675, this court, speaking through the late Justice OWEN, said:

"Whether an officer of a corporation stands in the relation of a trustee to a stockholder so that in the purchase by the officer of the stock of the stockholder he is under obligation to make full disclosure of matters affecting the value of the stock, is an open question in this state (*McMynn v. Peterson,* 186 Wis. 442, 201 N. W. 272), and we do not deem it necessary to give that question further consideration at this time."

The court said, in *McMynn v. Peterson, supra:*

"We recognize that the officers of a corporation represent all the stockholders and that situations may arise where full

publicity of all the negotiations and business affairs of the corporation may be detrimental to the welfare of the stockholders considered as a whole. In such cases all that may be required of the officers is the exercise of honest judgment and honest disclosure in so far as disclosure of the business is made."

However, in the above case, the court said:

"The correct rule in such a case is laid down in *Strong v. Repide*, 213 U. S. 419, 29 Sup. Ct. 521," from which case this court quoted approvingly as follows:

" 'A director upon whose action the value of the shares depends cannot avail of his knowledge of what his own action will be to acquire shares from those whom he intentionally keeps in ignorance of his expected action and the resulting value of the shares. . . . *Even though a director may not be under the obligation of a fiduciary nature to disclose to a shareholder his knowledge affecting the value of the shares, that duty may exist in special cases, and did exist upon the facts in this case.* In this case the facts clearly indicate that a director of a corporation owning friar lands in the Philippine Islands and who controlled the action of the corporation, had so concealed his exclusive knowledge of the impending sale to the government from a shareholder from whom he purchased, through an agent, shares in the corporation, that the concealment was in violation of his duty as a director to disclose such knowledge and amounted to deceit sufficient to avoid the sale.' "

We recognize, of course, that the action in *Strong v. Repide, supra,* was prosecuted under the Philippine civil code, of which article 1269 provides:

"There is deceit when by words or insidious machinations on the part of one of the contracting parties the other is induced to execute a contract which without them he would not have made,"

but the United States supreme court held that the Philippine code rule should be interpreted the same as the "common

law" in respect to liability for concealment, and applied the correct common-law rule of liability for active concealment. The defendant did not deal directly with the plaintiff for the purchase of her stock. He employed an agent for that purpose, and concealed from the plaintiff's agent his own identity and his knowledge of the state of the negotiations and their probable result. The agent of the plaintiff was ignorant regarding the state of the negotiations for the sale of the land, which negotiations and their probable result were a most material fact affecting the value of the shares of stock of the company, and he would not have sold them at the price he did, had he known the actual state of the negotiations as to the lands, and that it was the defendant who was seeking to purchase the stock. The court said:

"Concealing his identity when procuring the purchase of the stock, by his agent, was in itself strong evidence of fraud on the part of the defendant. Why did he not ask Jones, who occupied an adjoining office, if he would sell? But by concealing his identity he could by such means the more easily avoid any questions relative to the negotiations for the sale of the lands and their probable result, and could also avoid any actual misrepresentations on that subject, which he evidently thought were necessary in his case to constitute a fraud. He kept up the concealment as long as he could, by giving the check of a third person for the purchase money."

In this case the supreme court of the Philippine Islands held that there was no fraud in the purchase, holding that the responsibility of the directors of a corporation to the individual stockholders did not extend beyond the corporate property actually under the control of the directors; that they did not owe any duty to the members in respect to their individual stock, which would prevent them from purchasing the same in the usual manner. The United States supreme court reversed the judgment of the supreme court of the

Philippine Islands and affirmed the judgment of the "court of first instance" (the trial court).

In the case at bar, the defendant initiated the negotiations for obtaining the plaintiff's stock. He admits that he purposely kept his identity concealed so that the plaintiff and her brother, Edgar, would not suspect that something important had happened affecting the value of their stock, and that when he opened negotiations at Detroit through his agent he knew that a four-fifteenths interest in the Kotex Company was to be sold for $4,000,000, which would result in a very substantial increase in the value of plaintiff's stock in the Kimberly-Clark Company; he knew that the plaintiff had no knowledge of these important facts.

It further appears that the deposit agreement to which reference has been made in the statement of facts is dated as of November 1, 1926. The plan, as therein provided, for the reorganization of Kotex Company had its inception in the meeting at Neenah on October 8, 1926. Thereafter, through the month of October, the reorganization plan under the deposit agreement was put in final shape. The deposit agreement is one between the stockholders of Kotex Company, the stockholders of Kimberly-Clark Company, and a committee of five, of which the defendant was a member, and provides:

"This agreement shall be signed by members of the committee and filed with the Kotex Company at its office in the city of Neenah, Wisconsin, and any holder of stock in the Kotex Company and/or in the Kimberly-Clark Company may make himself a party to this agreement by signing this agreement or a counterpart thereof, and/or by depositing with the committee his certificate for shares of stock in the Kotex Company duly indorsed in blank and the shares represented by the certificates so deposited or hereafter acquired by the committee as hereinafter provided shall be received by the committee and held by the sole direction of the commit-

tee, and under the terms and provisions of this agreement; and each of such stockholders, upon subscribing to a copy of this agreement and/or depositing such certificate shall, as to the shares of stock in the old corporation [Kotex Company] which said stockholder has at the time of becoming a party to this agreement or may acquire pursuant to the terms of the reorganization plan as proposed by this agreement, become a party to and be bound by the provisions of this agreement, and shall receive from the committee signed by one of its number duly authorized a transferable certificate."

In the deposit agreement, the Kotex Company, originally organized as the Cellucotton Products Company, is referred to as the "old corporation." The company proposed to be organized under the laws of the state of Delaware, referred to as the "new corporation." The Kimberly-Clark Company is referred to as the "paper company." The deposit agreement provides:

"Whereas, a large proportion of the capital stock of the old corporation [Kotex Company] is held by the Kimberly-Clark Company, a Wisconsin corporation, hereinafter called the 'paper company,' having an authorized capital stock of fifty thousand shares of preferred stock and one hundred and ten thousand shares of common stock of no par value, and as a part of the plan of reorganization it is contemplated that said paper company may distribute to and among its common stockholders its stock holdings in the old corporation in which event said common stockholders will become stockholders of the old corporation and as such will be parties to said refinancing and reorganization."

Defendant testified:

"My purpose in setting up the deposit agreement was to perform a service for the stockholders in reference to realizing on their proportionate share of the Kotex stock. The first purpose was to subject all the stock to the agreement, which contained a general plan of reorganization and give the committee power to carry out and modify the plan if it was deemed wise."

This deposit agreement did not disclose the tentative agreement for a sale of a four-fifteenths interest in Kotex Company for $4,000,000. It did authorize the committee to provide in the new organization for the issuance of not to exceed $4,000,000 of second preferred with a provision to make same convertible into common stock. Under the terms of the agreement, the committee could issue the convertible preferred stock to those who were purchasing a four-fifteenths interest in Kotex Company for a consideration of $4,000,000. While the deposit agreement makes no mention as to the manner of notifying the stockholders of Kotex Company and the stockholders of Kimberly-Clark Company of the plan for reorganization as contained in the agreement, since the committee, by the terms of the agreement, was to represent the stockholders of both Kotex Company and the Kimberly-Clark Company, it will be presumed that the duty of so notifying the stockholders of both companies rested with the committee. The plaintiff did not learn of the deposit agreement until about two weeks after she had sold the one hundred shares of her stock in the Kimberly-Clark Company to the defendant. She then learned of it through her brother-in-law, who was living in Appleton at the time.

It is contended by appellant that this deposit agreement creates no trust relationship between the defendant and the plaintiff as to the plaintiff's stock in the Kimberly-Clark Company; first, because the agreement was not executed by either of the parties at the time the defendant purchased plaintiff's stock; second, that the agreement does not in any way relate to the sale of the plaintiff's stock. As to the first contention, the agreement bears date of November 1, 1926. Defendant testified that he signed it on the second or third of November. His agent at Detroit acquired the plaintiff's stock on November 6th. As to the second contention, that the agreement does not in any way relate to the sale of the

plaintiff's stock, we interpret it as relating to all the stock, both of the Kotex Company and the Kimberly-Clark Company. Defendant said that his purpose in setting up the deposit agreement was to perform a service for the stockholders in reference to realizing on their proportionate share of the Kotex Company stock. "The first purpose was to subject all of the stock to the agreement" which contained a general plan of reorganization, and "give the committee power to carry out and modify the plan if it was deemed wise."

If, as a part of the plan of reorganization, the two thousand six hundred and eighty-five shares of the Kotex Company stock which was owned and held by the Kimberly-Clark Company was to be distributed as a stock dividend or otherwise to the holders of the common stock of the Kimberly-Clark Company, it cannot be said that the deposit agreement did not relate to all of the plaintiff's stock in the Kimberly-Clark Company, which would include the one hundred shares in question. We must hold that, under the special circumstances here existing, the deposit agreement created a trust relationship between the members of the committee of which defendant was a member and all the stockholders of the Kotex Company and the Kimberly-Clark Company; that when the defendant, as a member of said committee, placed himself in such relationship to all the stockholders of the Kotex Company and the Kimberly-Clark Company, he was not thereafter at liberty to negotiate as he did through his agent at Detroit with the plaintiff for the purchase of her stock without making an honest disclosure of the plans for the reorganization of the Kotex Company and the material facts in connection therewith affecting the value of plaintiff's stock in the Kimberly-Clark Company.

We believe the facts in the instant case bring it within the rule as declared by this court in *Bray v. Jones, supra,* at page 589. The defendant, Jones, was serving as one of the

trustees with whom the stock there in question had been deposited, and the plaintiff, Bray, was also a stockholder. While this court held the trust relationship did not prevent Jones purchasing Bray's stock, the court said:

"But because of the confidential and fiduciary relationship existing between him [Jones] and Bray, it was his [Jones] duty to inform Bray of every fact and circumstance within his knowledge affecting the value of the stock."

This decision is in accord with the special-circumstance rule to which reference is made in 3 Fletcher, Cyc. Corp. (perm. ed.) § 1171. The author says:

"There may be special circumstances requiring a director to disclose to a stockholder the general knowledge which he may possess regarding the value of the shares of the company before he purchases any from a stockholder. 'The special circumstances producing exceptional cases seem to be an assured sale, merger, or other fact or condition enhancing the value of the stock, known by the officer or officers, not known by the stockholder, and not to be ascertained by an inspection of the books.' "

To the same effect, see *Buckley v. Buckley*, 230 Mich. 504, 508, 202 N. W. 955; L. R. A. 1916B, 713; 84 A. L. R. 623; Ann. Cas. 1918B, pp. 241, 243.

Under all the circumstances of this case, as disclosed by the evidence relative to the issues covered by the questions of the special verdict, which the trial court permitted to stand, we are of the opinion that the verdict is sustained by the evidence. It has the approval of the trial court and should not be disturbed.

The respondent gave notice of review on this appeal and alleges, among other errors, that the trial court erred in denying interest from the date of the sale of plaintiff's stock, namely, November 6, 1926. The trial court allowed interest at six per cent per annum from the date of the verdict, which

was June 29, 1934. In this respect the trial court erred. In so holding, the trial court said:

"The court is of the opinion that interest on the damages found by the jury is recoverable only from the date of the verdict, because the damages being wholly unliquidated, could not be fixed by known and reasonably certain market values or other definite standards. . . . This is the test to be applied in this case, as held in *Necedah Mfg. Corp. v. Juneau County,* 206 Wis. 316."

In *Shaw v. Gilbert,* 111 Wis. 165, 86 N. W. 188, the plaintiff sold goods to the defendant in reliance upon false statements made by the latter as to its solvency. Interest was held allowable from the date on which the plaintiff was fraudulently deprived of his property. The court said:

"There can be no doubt that one defrauded of money or valuable property is entitled to recover not only such money or value, but also interest from the date of the deprivation, both of them as legal elements of his damage. *John V. Farwell Co. v. Wolf,* 96 Wis. 10, 20. It follows that, when the necessary facts are ascertained, the court may and should apply the law. When the value of the property lost and the date are found by the jury, rendition of judgment, including the interest, follows as necessarily as for the value itself."

To the same effect, see *J. I. Case Plow Works v. Niles & Scott Co.* 107 Wis. 9, 17, 82 N. W. 568; *Domaiki v. Liberty L. & I. Co.* 175 Wis. 588, 185 N. W. 224. In the latter case the plaintiff sought recovery for fraud in an exchange of lands. The court said:

"Since the evidence sustains the conclusion that plaintiff, through defendant's false and fraudulent representation, paid defendant $1,255 in excess of what should have been paid to it, the conclusion logically follows that the defendant not only received this $1,255 wrongfully, but also that the plaintiff was wrongfully deprived of its use from the time of the conveyance of the property and that the defendant had the benefit of its use, thus damaging the plaintiff to the amount of the

value of such use, which is measured by the reasonable interest on such amount. We think the court properly awarded the plaintiff recovery of six per cent interest from the date of the transaction to the date of judgment on the amount of the damages found by the jury as an item of the damages that plaintiff sustained."

*Schroeder v. Carroll,* 192 Wis. 460, 212 N. W. 299. In *Necedah Mfg. Corp. v. Juneau County, supra,* damages were claimed only from the time demand was made by filing the claim against the county under sec. 59.76, Stats.

We conclude that plaintiff is entitled to interest at six per cent per annum on the difference between what she received for her stock on November 6, 1926, and the value of said stock as found by the jury, from November 6, 1926, to the date of the verdict, and the judgment will be modified accordingly.

*By the Court.*—Judgment modified as to the item of interest in accord with opinion, and, as so modified, is affirmed.

A motion for a rehearing was denied, with $25 costs, on February 4, 1936.