### BROOKS EQUIPMENT AND MANUFACTURING COMPANY v. FRED TAYLOR.

(Filed 12 October, 1949.)

**1. Pleadings § 15—**

Plaintiff demurred to defendant's counterclaim. The court reserved ruling thereon, heard evidence in the absence of the jury, and granted motion for nonsuit on the counterclaim. *Held:* The peculiar form of the proceeding taken under the supervision of the court does not forfeit defendant's right to be heard on any aspect of his pleading which, by liberal construction, presents a cause of action upon which he may be entitled to relief.

**2. Fraud § 9—**

While the constituent facts constituting fraud must be pleaded, no set formula nor precise technical language is required, but the pleading is sufficient if, upon a liberal construction, proof of the constitutive facts alleged would entitle the pleader to relief.

**3. Same—**

Plaintiff instituted action on a note. Defendant alleged that the note was given for balance due on the purchase price of a tractor, that prior to the sale defendant paid plaintiff to make an inspection of the tractor and report its condition, and that plaintiff's sales agent made false and fraudulent statements as to the condition of the tractor which induced defendant to make installment payments on the machine, and that when delivered the machine had basic defects amounting to a total failure of consideration. *Held:* The answer sufficiently alleges a counterclaim for fraud as against demurrer.

**4. Sales § 6—**

Where the circumstances are such that it is the duty of the seller to apprise the buyer of defects in the subject matter of the sale, known to the seller but not to the buyer, the doctrine of *caveat emptor* does not apply, and in such instance *suppressio veri* is as much fraud as *suggestio falsi.*

**5. Sales § 28—**

Where the seller for a fee makes an inspection of the article at the buyer's request and thereafter represents that the condition of the article is "o.k.," it is immaterial whether the seller consciously misrepresents its condition or was merely recklessly reporting something to be true of which he had no knowledge.

**6. Same—Whether buyer was entitled to rely upon seller's representations as to condition of machine held for jury.**

Defendant's evidence on his counterclaim was to the effect that he watched a tractor at work, advised plaintiff's sales agent that he knew nothing about tractors but would buy the tractor if plaintiff would take the machine back to its plant and check its condition, that this was done upon the payment of a fee by defendant, that upon inquiry by defendant, plaintiff's sales agent represented the condition of the tractor to be good, and that when delivered the block of the engine was bursted and the piston rods of the cylinders operating the hoist had pulled out. *Held:* Whether defendant might reasonably rely upon the representations as to the tractor's condition under the circumstances was a question for the jury, there being a reasonable inference that such defects existed at the time the machine left the plaintiff's plant.

Defendant's appeal from *Pless, J.,* April Term, 1949, Avery Superior Court.

The plaintiff brought action on an installment promissory note in the sum of $4,342.61, subject to a credit of $1,809.40, leaving a balance of $2,513.55, with interest, and filed complaint in the usual form without revealing the consideration or detailed reference to the security it mentions.

The defendant, answering, admitted the execution of the note, but averred that it was procured through fraud and sets up the circumstances he denominates as fraud in a further defense,—"cross-action and counter-

claim." He alleges, in substance, that the note represented the purchase price of a Caterpillar tractor purchased from plaintiff corporation under the inducement of false and fraudulent statement of the sales agent as to its condition, which plaintiff undertook to investigate and report, and that he was induced to make installment payments on the machine after discovery of its defective condition on the promise that plaintiff would remedy the same and put it in good condition.

He alleges a total failure of consideration by reason of the defective condition of the tractor and says that plaintiff should not recover any sum on its claim. He alleges that he has been compelled to spend approximately $2,800 in an effort to get the tractor to do his work, upon which he concedes a credit of $500, the total amount earned by the tractor while in his possession, and asks judgment for $6,257.41 due on his counter-claim.

In reply the plaintiff sets up in detail the circumstances as it contends attended the purchase of the tractor. It is alleged that the defendant had an opportunity to inspect the tractor while in operation and did so inspect it; denies that plaintiff sold the machine to defendant and avers that it was sold to defendant by one Lee Lambert, "who has no connection with the plaintiff except as a customer, and that by reason of his indebtedness to plaintiff he caused the note sued on to be made payable to plaintiff." It denies any liability in the matter; denies that it undertook to recondition the tractor or check its condition, but avers that it was employed to make certain alterations and to do so at the expense of the defendant.

On the trial plaintiff introduced the note sued upon and also a conditional sales or title retention contract given in security for the note, in which contract the plaintiff appears as the original owner and seller, to whom the purchaser was solely obligated.

J. J. Lannon, assistant sales manager, testified that defendant came to see him about buying a Caterpillar tractor, and that the company at the time did not have one in its possession. Over objection the witness was permitted to testify (a) that the plaintiff had a customer who had one, (b) that this customer, Lee Lambert, was indebted to plaintiff.

Mr. Taylor and Mr. Davis went out from Knoxville and saw the tractor in operation, "working on the stockpile on Lambert Brothers' job, feeding the feeder of a black top plant." After watching the feeder about 15 minutes, Mr. Davis operated the tractor, or tried to do so, and after it was tried out Mr. Taylor bought the machine.

On cross-examination: "We watched Mr. Davis operate, or try to operate the machine for 10 or 15 minutes," and witness then took the machine to Knoxville. Mr. Taylor wanted the blades extended—it was not repairs; also lights were put on.

G. R. Marshall, with whom the note had been discounted, testified as to payments made on this note, giving dates and amounts.

W. B. Helsley, member of plaintiff's company, testified that on failure of Taylor to satisfy the note he paid the balance at the bank and took it up. He exhibited paid check in the sum of $2,513.55, as used in the exchange. Mr. Taylor made no further payments on the "repurchased" note. Plaintiff rested.

The defendant demurred to the evidence and moved for judgment of nonsuit, which was declined. Defendant excepted.

At this point plaintiff demurred *ore tenus* to defendant's counterclaim and cross-action on the ground that fraud had not been sufficiently alleged. The court withheld its ruling; and stated that the jury would be excused and the defendant permitted, in its absence, to introduce evidence in support of his contentions. Thereupon the jury retired and the defendant presented substantially the following evidence in support of his claim:

Fred Taylor, the defendant, testified that he had a conversation with Mr. Lannon, plaintiff's sales agent, at Knoxville in 1947. He told Mr. Lannon of his need for a tractor and of the work it was intended to do. At Lannon's suggestion he went out some distance from Knoxville and looked at a tractor in operation which seemed to be pushing up gravel through the shovel, loading up trucks at a gravel pile. "We looked the tractor over and I told Mr. Lannon I knew nothing about a tractor but I would buy it if he would take it back to Knoxville and check it and see in what condition it was. The price was to be $6,244.11. Mr. Lannon said it was a great distance from Knoxville and would cost money to take it back and check it and see what condition the machine was in. Defendant told him he was willing to pay to find out what condition the tractor was in and that he also wanted the blades made wider. He paid Lannon $100 at the time and Lannon agreed to take it back and check it. About three days later Charlie Hughes called defendant and told him he had some papers from the Brooks Equipment Company for him to sign. Defendant told Mr. Hughes he did not want to sign the papers at the time because they had promised to take the tractor into the shop and check its condition. While they were talking about the tractor Mr. Davis had said there was something wrong about the hoist, the cutting clutch and some other part. This was called to Mr. Lannon's attention. Mr. Hughes got the papers the second or third day and defendant instructed him to hold them until he could ascertain whether or not the equipment company had checked the tractor as they had promised to do. Defendant called up later and inquired of Lannon if they had checked the tractor and was informed they had. He asked him what condition it was in and Lannon said it was "o.k." Defendant asked him about the hoist. Lannon

said it was "o.k.; needed a little oil." Defendant then went back to Hughes' office and signed the papers.

The .equipment company still lacked a little work in widening the blades. Defendant was told he could have the tractor on a certain day. Defendant sent a "float" (motor carrier) for the tractor which Lannon said was ready to go. Then defendant again called Lannon and inquired what condition the tractor was in, was it all shaped up and ready to go, and was told that it was. This statement was confirmed by the head mechanic at Lannon's request.

The defendant then let Davis take charge of the tractor and sent to the plaintiff a down payment of $2,148.01. The tractor was sent to Virginia where Taylor was to have it employed on a rental basis and an attempt made to put it into service. When the tractor was delivered in Virginia it had to be "dragged off the float" or carrier there, "because they couldn't get the blades up." When the engine would start up "it would shoot surplus water out of the exhaust pipe about the size of your arm, throw it up in the air. This was a diesel engine and the water was thrown up to the air because of the block being bursted."

Examination by the court: Defendant testified that he offered the machine back to the Brooks Company, notified them 10 or 15 days after the trade the machine was not what he wanted. He tried to get the machine to work before he said anything to them; had the hoist and the side cylinders taken off and sent them to the Marion Machine Shop and had the cylinder honed out and new pistons made for it. The piston rods had pulled out. He finally found that it couldn't be used; and the contractor who had rented it ordered it off the job. He notified the plaintiff and received a letter from it to the effect that the tractor belonged to Mr. Lambert and that the equipment company could do nothing about it; that he would have to go back on Mr. Lambert.

Defendant testified that while attempting to use the tractor he did not succeed in getting more than one day's work out of it. He did receive, however, $500 which he said the contractor gave him more out of sympathy than in payment of rental.

Defendant further testified as to sums spent in trying to put the tractor in condition to be used.

The plaintiff having introduced admissions in the answer as to the execution of the note and installment payments made by defendant and having omitted the context, defendant presented in evidence portions of the answer alleging that the execution of the note and the payment of installments were induced by the false representations of plaintiff.

The following appears in the record:

 "Upon being advised by counsel for defendant that this evidence constituted the grounds for the alleged fraud, the Court stated:

'The defendant then offered other evidence which was corroborative and accumulative in support of the evidence testified by the defendant himself, but upon intimation of the Court that this would not, in the opinion of the Court, be sufficient to withstand plaintiff's counterclaim, deferred to said intimation and offers no further evidence.' "

Thereupon the judge entered the order: "Upon the statement of the defendant that he has no further evidence, the plaintiff's motion for judgment as of nonsuit on the counterclaim is allowed." To this the defendant excepted.

The court thereupon gave a peremptory instruction to the jury that "if you believe all the evidence of the case, and find that to be the truth in the matter, you will answer the issue (as to the amount due plaintiff) in the sum of $2,513.55, with interest." To this defendant excepted. The jury answered as directed. Defendant moved to set aside the verdict and the motion was denied, and defendant excepted. To the ensuing judgment defendant excepted and appealed.

*R. W. Wall and Fouts & Watson for defendant, appellant.*
*Charles Hughes and Folger Townsend for plaintiff, appellee.*

SEAWELL, J. When the plaintiff had completed its evidence counsel demurred to defendant's pleading which set up his further defense and counterclaim, on the *ground that fraud was not sufficiently alleged.* The court reserved its judgment on the demurrer pending further proceedings. These consisted of a preview in the absence of the jury of the evidence the defendant intended to offer in support of his defense and counterclaim. It can readily be seen that the defendant's evidence had no relevancy to the demurrer, which was to the pleading. At the conclusion of this hearing defendant was advised by the court that it would not, in the court's opinion, be sufficient "to withstand plaintiff's counterclaim,"—no doubt meaning the claim plaintiff had asserted in the action. The defendant, in deference to the intimation given by the court, "offered no further evidence." Thereupon the court allowed plaintiff's "motion for nonsuit on the counterclaim." This may have referred to the demurrer to the pleading, or it may have taken in consideration the evidence just heard in the absence of the jury.

The part played by the defendant in establishing the theory of the trial in the lower court, and the procedure adopted, seems subordinate to that of the court, and ought not to forfeit his right to be heard on any aspect of his pleading which, by liberal construction, presents a cause of action upon which he may be entitled to relief.

The pleading, notwithstanding any defect of mere form, and regardless of its allegation of fraud, sufficiently sets up a cause of action for breach of implied warranty; and we have no doubt that if presented in that aspect alone, without accompanying diversions, the jury might have so found.

But our immediate concern is with the sufficiency of the defendant's plea of fraud and the support afforded it in the evidence he desired to be submitted to the jury.

It is true that the party charged with fraud must be informed of the constituent facts because he has to answer; and the judge passing upon the pleading, also, because he must judge of their character as *prima facie* fraudulent; but the pleading need not observe any set formula or be in precise technical language to be good on demurrer. It is sufficient if, upon a liberal construction of the whole pleading, the charge of fraud might be supported by proof of the alleged constitutive facts. However informal, the defendant's pleading fulfills this condition.

Ordinarily the rule *caveat emptor* applies to sales of personalty, but there are so many exceptions that we must look to the particular circumstances surrounding the transaction to determine the respective duties of buyer and seller with respect to discovering defects shown to have existed in the subject of the sale at the time it is made.

It is a practically universal rule, and it is the law in this State, that under circumstances which make it the duty of the seller to apprise the buyer of defects in the subject matter of the sale known to the seller but not to the buyer, *suppressio veri* is as much fraud as *suggestio falsi.* 46 Am. Jur., Sales, sections 94, 96, 98; Williston on Sales, sections 631 (a), 632, 634; Restatement, Sales, 471 (b) ; *Brown v. Gray,* 51 N.C. 103, 76 Am. Dec. 563; *Southern Iron & Equipment Co. v. Bamberg, E. & W. Ry. Co.,* 149 S.E. 271, 151 S.C. 506. To the defendant the serious defects existing at the time of the sale were unknown. The casual inspection made by him in Tennessee and the opportunity afforded him were not sufficient to discover them. To him they were latent. He could not reasonably be supposed to have gone into the complicated interior of the tractor at that time and discover the defects in the engine block and the cylinders which operated the hoist. He explained to the selling agent that he knew nothing about tractors; and in fact must rely on the plaintiff as to the condition of the machine and its ability to perform the work intended. Plaintiff, the seller, introduced a new element in the relation between the parties when its agent, at the request of the defendant, undertook to take the tractor to its shops in Knoxville and there investigate its condition and report thereon as a condition precedent to the sale. The duty then rested upon him, in the exercise of good faith, to make the

examination which he had promised, and for which he had been paid, and report the condition to the prospective buyer.

It may be inferred from the evidence that the crack in the engine block which caused the exhaust to spout water as soon as it was put to work in Virginia, existed before it left plaintiff's possession; and that the defect in the cylinders through which the hoist was operated did not suddenly develop en route from plaintiff's machine shops in Knoxville to Virginia. There is a reasonable inference that they existed as material facts at the time of plaintiff's examination in its shops at Knoxville, and that plaintiff's agent knew of this condition when he advised the defendant that the tractor was "o.k." and ready to go; and, therefore, it was his duty to disclose these defects to the defendant buyer.

But it will be observed that if these defects did exist, the selling agent added his positive declaration to the contrary in reporting that the machine was "o.k."; and it makes no difference whether he was consciously misrepresenting the fact, or was merely recklessly reporting something to be true of which he had no knowledge. 46 Am. Jur., sec. 98; Anno. 61 A.L.R. 492, 509 (c); Williston on Sales, 634.

The main point is whether the defendant might reasonably rely on the plaintiff with respect to the condition of the tractor without undertaking an examination beyond the limits of his skill and experience and his opportunity, and which the plaintiff had specifically agreed to make for him. Under the circumstances we have outlined that became distinctly a jury matter. 46 Am. Jur., p. 288, 598; 24 Am. Jur., Fraud and Deceit, sec. 143.

We cannot find from the record that the defendant at any time surrendered his rights by reason of the peculiar form of the proceeding in which he became involved. And we think that his Honor was in error in holding that fraud was not sufficiently pleaded and nonsuiting the defendant on his cross-action and counterclaim, and in instructing the verdict for the plaintiff.

The defendant is entitled to a trial *de novo*. It is so ordered.

New trial.