HUGH A. RAGSDALE, SR. v. SHERMAN KENNEDY, BILL CLEVE
AND WILLIAM B. BROWN

No. 744SC412

(Filed 7 August 1974)

1. **Bills and Notes § 4; Seals— seal on note — consideration**
   The seal on a promissory note imports a valuable consideration.

2. **Reformation of Instruments § 4; Rules of Civil Procedure § 9— revision of note — mistake — insufficiency of allegation**
   Defendants' allegation that the provision for attorney fees in a promissory note was not stricken through because of error, oversight and mutual mistake was not sufficiently particular to support revision of the note because of mistake. G.S. 1A-1, Rule 8; G.S. 1A-1, Rule 9(b).

3. **Sales § 21— fraud by seller — rights of purchaser**
   In a case of actionable fraud by the seller, the purchaser has the right, at his election, to affirm the contract of purchase and retain whatever property or advantage he has received under it; and while his affirmance ends his right to rescind the contract, it does not prevent him from recovering from the seller, either in an independent action or by way of counterclaim when sued by the seller for the purchase price, the damages sustained by him by reason of the seller's fraud.

4. **Corporations § 13; Fiduciaries; Fraud § 7— corporate president-manager — no fiduciary duty to directors**
   The president-manager of a corporation does not stand in a fiduciary relationship to the corporation's directors merely by virtue of his position as president-manager; therefore, fraud or unfair dealing will not be inferred in the sale of the corporation's stock by the president-manager to the directors absent a showing of special circumstances creating such a fiduciary relationship.

5. **Corporations § 13; Fraud § 9— insufficient allegations of fraud**
   Allegations by defendant corporate directors that plaintiff, the president and manager of the corporation, knew of the deteriorating financial position of the corporation but told defendants that the corporation was a "gold mine" were insufficient to allege active fraud by plaintiff in the sale of stock of the corporation to defendants.

   Judge BALEY dissenting.

APPEAL by defendants from *Cowper, Judge,* 11 February 1974 Session of Superior Court held in ONSLOW County. Heard in the Court of Appeals 18 June 1974.

This is an action seeking recovery on a promissory note in the amount of $20,000.00. Judgment was rendered for the plaintiff on the pleadings.

Defendants appealed.

*Warlick, Milsted & Dotson, by Alex Warlick, Jr., for the plaintiff.*

*Zennie L. Riggs, for the defendants.*

BROCK, Chief Judge.

Plaintiff's complaint contains four numbered allegations as follows:

"(1) That on or about November 22, 1972, defendants executed and delivered to plaintiff a promissory note, whereby defendants promised to pay to plaintiff or order 60 days from date, the sum of Twenty Thousand Dollars ($20,000.00), with interest thereon at the rate of six and one-half (6½) percent per annum; a copy of said note is hereto attached as Exhibit 'A.'

"(2) That defendants have paid nothing on the principal amount of said note, and have paid interest through March 7th, 1973.

"(3) That said note provides, that, in addition to the outstanding balance, the holder shall be entitled to recover reasonable attorney's fees to the extent permitted by applicable law.

"(4) That said defendants, jointly and severally, owe to the plaintiff the amount of said note, to wit, Twenty Thousand Dollars, ($20,000.00), and interest from March 7th, 1973, at six and one-half (6½) percent per annum, and attorney's fees in the amount of Three Thousand Dollars ($3,000.00)."

The copy of the note which was attached to the complaint shows that it was executed under seal by each defendant.

As a "FIRST DEFENSE," defendants assert that the complaint fails to state a claim upon which relief can be granted. Obviously, this "FIRST DEFENSE" does not raise an issue of fact. Also, it is obvious that it is devoid of merit.

[1]   As a "SECOND DEFENSE," defendants admit the allegations of paragraphs (1), (2) and (3) of the complaint, and deny each and every other allegation. By this "SECOND DEFENSE," defendants admit the execution of the note under seal. The seal on a

promissory note imports a valuable consideration. *McGowan v. Beach*, 242 N.C. 73, 86 S.E. 2d 763. Defendants admit payment of interest and no payment on principal. Defendants admit the provision for attorney fees. Absent an affirmative allegation which raises an issue of fact, the foregoing admissions will entitle plaintiff to judgment on the pleadings for the principal, interest, attorney fees and costs.

Having admitted the execution and nonpayment of the note, absent an affirmative allegation which raises an issue of fact, defendants' general denial of allegation (4) of the complaint does not entitle them to a trial on the merits. Therefore, insofar as defendants' "FIRST DEFENSE" and "SECOND DEFENSE" are concerned, plaintiff is entitled to judgment on the pleadings.

[2]    We will pass over for the moment a discussion of defendants' "THIRD DEFENSE" and take up their "FOURTH DEFENSE." By their "FOURTH DEFENSE," defendants assert that the provision for attorney fees in the note "were not stricken through" because of error, oversight and mutual mistake. G.S. 1A-1, Rule 8, requires that an affirmative defense shall be sufficieintly particular to give the court and the parties notice of the transactions, occurrences, or series of transactions and occurrences, intended to be proved. G.S. 1A-1, Rule 9(b), requires that the circumstances constituting mistake shall be stated with particularity. The mere statement that something was or was not done through error, oversight and mutual mistake is not sufficient to satisfy the minimum requirements for seeking the revision of a contract because of mistake. Such an allegation does not raise an issue of fact for determination.

Defendants' "THIRD DEFENSE" is as follows:

"THIRD DEFENSE: Further answering the complaint and as a defense and set off the defendants allege and say:

"1. Onslow Livestock Corporation, a North Carolina corporation, was formed in October of 1970, with an original capitalization of 45,000 shares. Raymond Smith was the President and General Manager of the business until ill health forced him to resign in December of 1970. At that time Jack Hinson became President and General Manager and managed the business until he sold his stock interest on June 6, 1972. At that time plaintiff became President and General Manager and managed the business until Novem-

ber 22, 1972, when he sold his stock interest to the defendants.

"2. Defendant Brown had been a stockholder since the incorporation of the business, and a board member. On June 6, 1972 defendants Kennedy and Cleve became stockholders and board members.

"3. During the period June 6, 1972 to November 22, 1972 the plaintiff, as President and General Manager of Onslow Livestock Corporation, ran the business for the corporation without holding any monthly Board of Directors meetings, which had been the procedure prior thereto, and without interference by defendant stockholders.

"4. In November 1972, prior to the date of purchase and sale of plaintiff's interest in the corporation, plaintiff had told the defendants Brown and Kennedy that the business was a 'gold mine.'

"5. That on or about November 22, 1972 defendants purchased from plaintiff for $60,000.00 the following: (a) 12,500 shares of $1.00 par value common stock of Onslow Livestock Corporation, (b) plus corporation notes with face value of $29,000.00, with accrued interest at 7%, dated at various times, and payable at various dates; for $40,000.00 cash and the $20,000.00 note plaintiff is suing to collect.

"6. That at the time the plaintiff sold his interest in the corporation he was the President and General Manager of the corporation and held a fiduciary relationship to the defendants; and owed them the duty to fully inform them of the condition of the corporation and not to conceal any material facts.

"7. That the plaintiff knew or, by proper supervision and management of the affairs of the corporation, should have known that, during the period that he was President and General Manager of the corporation (from June 6, 1972, to November 22, 1972), the financial condition of the corporation had worsened in that:

"(a) the cash and cash on deposit of the corporation had decreased by approximately twenty thousand dollars,

"(b) he had borrowed for the corporation an additional $15,000.00 from the corporation's bank,

"(c) the liability of the corporation had increased in that:

"1. from a sight draft paying basis for purchases from Ralston-Purina Company the corporation had become indebted on an open account basis to Ralston-Purina Company in the amount of $10,000.00,

"2. the corporation had become overdrawn in its purchase of corn from Lawrence Warehouse Systems and owed the bank $3,910.00 for the overdraft.

"3. The demand note due to the bank had become delinquent because the monthly payment of interest had not been made when due;

"(d) the working capital of the corporation had become depleted, and there were not enough funds on hand, or to come in hand through the normal course of business, to pay the normal operating expenses of the business.

"8. That the plaintiff, at the time of the sale of his interest in the corporation to the defendants, did not inform the defendants of the above material facts and other facts necessary to give the defendants a true picture of the condition of the corporation.

"9. Soon after the sale and purchase of the interest of the plaintiff in the corporation the bank called its demand note, further reducing the working capital of the corporation, and resulted in a forced sale of the assets of the corporation.

"10. That the defendants relied on the representation of the plaintiff that the business of the corporation was a 'gold mine' and on his representation, by concealment of material facts, that they would be buying stock in a 'going concern' corporation.

"11. That the defendants were in fact deceived as to the condition of the corporation and the value of the stock of the corporation.

"12. That the defendants were damaged by the false representation and concealment of material facts by the

plaintiff by at least the amount that the plaintiff is su-
ing for."

Defendants argue that the allegations of their "THIRD DE-
FENSE" show a fiduciary relationship between plaintiff and
defendants. They argue that the president and general manager
owes to the defendants, as members of the corporation's board
of directors, the duty to fully inform them of the condition of
the corporation and not to conceal any material facts. They argue
that the allegations of their "THIRD DEFENSE" are sufficient to
constitute an affirmative defense for damages, even though
not denominated a counterclaim.

[3] In a case of actionable fraud by the seller, the purchaser
has the right, at his election, to affirm the contract of purchase
and retain whatever property or advantage he has received
under it. "When he does so, the transaction is validated as to
both parties, and either may sue the other to enforce any rights
arising to him under the contract. In such case, the purchaser
is liable to the seller for any portion of the purchase price which
remains unpaid. While his affirmance ends his right to rescind
the contract, it does not prevent him from recovering from the
seller either in an independent action or by way of counterclaim
when sued by the seller for the purchase price the damages sus-
tained by him by reason of the fraud of the seller. As a general
rule, the damages recoverable by the defrauded purchaser in such
event consist of the difference between the value of the property
sold as it was and as it would have been if it had come up to
the fraudulent representations." *Hutchins v. Davis,* 230 N.C.
67, 52 S.E. 2d 210.

G.S. 1A-1, Rule 8(c), provides, in part, as follows: "When
a party has mistakenly designated a defense as a counterclaim
or a counterclaim as a defense, the court, on terms, if justice so
requires, shall treat the pleading as if there had been a proper
designation." If defendants' "THIRD DEFENSE" sufficiently al-
leges actionable fraud, we see no impediment to treating it as a
counterclaim.

The final questions for resolution on this appeal are whether
defendants' allegations are sufficient to show the existence of a
fiduciary relationship between plaintiff and defendants at the
time of the sale to defendants and are sufficient to allege con-
structive fraud by the plaintiff while in such fiduciary capacity;
or, whether, if the allegations in the "THIRD DEFENSE" do not

show the existence of a fiduciary relationship, they are sufficient to allege active fraud by plaintiff.

"It is well settled that a representee has a right to rely upon representations where a confidential or fiduciary relationship exists between the parties. In such cases a high degree of frankness and fair dealing is required, and the representee cannot be charged with lack of diligence in failing to make an independent investigation, either at the time or afterward." 37 Am. Jur. 2d, Fraud and Deceit, § 254, p. 342. "It is a well-settled principle of the law of fraud, applied particularly by courts of equitable jurisdiction, that it is the duty of a person in whom confidence is reposed by virtue of the situation of trust arising out of a confidential or fiduciary relationship to make a full disclosure of any and all material facts within his knowledge relating to a contemplated transaction with the other party to such relationship, and any concealment or failure to disclose such facts is a fraud." *Vail v. Vail*, 233 N.C. 109, 63 S.E. 2d 202. Such a relationship "exits in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Abbitt v. Gregory*, 201 N.C. 577, 160 S.E. 896. "Intent to deceive is not an essential element of such constructive fraud." *Link v. Link*, 278 N.C. 181, 179 S.E. 2d 697.

It is clear that, in the conduct of the business and in the management of the affairs of a corporation, officers and directors stand in a fiduciary relationship to the corporation and its shareholders. G.S. 55-35; *Gordon v. Pendleton*, 202 N.C. 241, 162 S.E. 546; 2 Strong, N. C. Index 2d, Corporations, § 14, p. 378; 19 Am. Jur. 2d Corporations, § 1272, p. 679. However, in the case *sub judice*, we are not dealing with the conduct of the business or the management of the affairs of the corporation. We are dealing here with the sale of stock of the corporation, owned by the president-manager, to three directors.

The general rule is that "an officer or director of a corporation does not sustain a fiduciary relation to an individual stockholder with respect to his stock, and consequently the mere failure on the part of such officer or director, in purchasing the shares from the stockholder, to disclose any inside information, will not militate against him so long as he does not actively mislead the seller or perpetrate a fraud; in other words, ordinarily, a corporate officer or director has a right to purchase

the stock of a shareholder therein, the same as any other person has a right to purchase such stock, and there is nothing in the mere fact that the purchaser is an officer or director of the corporation whose shares he purchases from which fraud or unfair dealing may be inferred." Annot., 84 A.L.R. 615, at 616. "A sound and equitable view has been taken that while a director or officer may not be a strict fiduciary for an individual stockholder from whom he purchases stock, yet if called upon for information concerning the affairs of the company or if he volunteers such information or become active in inducing the sale, he must speak fully and frankly and conceal nothing to the disadvantage of the selling stockholder." 19 Am. Jur. 2d, Corporations, § 1329, pp. 736-737. The same reasoning applies to sales by an officer or director of his own stock in the corporation to a stockholder. 19 Am. Jur. 2d, Corporations, § 1331, p. 738. The reasoning applies even more strongly in a sale by a president-manager to his directors who are charged with the duty of handling, and are presumed to have full knowledge of, the corporate business and affairs.

[4]   In our opinion, a president-manager of a corporation does not stand in a fiduciary relationship to his directors merely by virtue of his position as such president-manager; and, absent a showing of special circumstances creating a fiduciary relation between the parties, or absent a showing of active fraud, such president-manager may sell his stock to his directors, and fraud or unfair dealing will not be inferred.

[5]   An examination of defendants' "THIRD DEFENSE," considered as a counterclaim, does not disclose allegations of special circumstances creating a fiduciary relationship between them and plaintiff, nor does it disclose allegations of active fraud. There is no allegation of a deliberate concealment from defendants by plaintiff of facts peculiarly in the knowledge of plaintiff and unavailable to defendants. The only representation which defendants allege plaintiff made to them was that plaintiff, at some time prior to the sale and purchase, told Defendants Brown and Kennedy that the business was a "gold mine." It is not alleged under what circumstances this alleged representation was made. Such a vague and indefinite allegation of such a vague and indefinite representation is not sufficient to allege active fraud by plaintiff. It is remarkable also that defendants do not allege that the actual value of the stock was less than the amount they paid plaintiff for it.

In our opinion, defendants have failed to assert a valid defense or counterclaim. The judgment entered in favor of the plaintiff on the pleadings is

Affirmed.

Judge BRITT concurs.

Judge BALEY dissents.

Judge BALEY dissenting.

The majority opinion holds that defendants' "Third Defense" does not state a claim for relief and that the trial court properly granted judgment on the pleadings. I believe that the "Third Defense" does state a claim for relief, both on the ground of actual fraud and on the ground of constructive fraud, and therefore I dissent.

The courts of North Carolina have often held that fraud may be committed by concealing the truth as well as by making a false statement. In *Isler v. Brown,* 196 N.C. 685, 146 S.E. 803, fraud was found to exist when defendant sold an automobile to plaintiff without disclosing that it was subject to a chattel mortgage. The Supreme Court stated:

> " 'It is a rule of equity, as well as of law, that a *suppressio veri* is equivalent to a *suggestio falsi;* and where either the suppression of the truth or the suggestion of what is false can be proved, in a fact material to the contract, the party injured may have relief against the contract.' "

*Id.* at 686, 146 S.E. at 804. In *Brooks v. Construction Co.,* 253 N.C. 214, 116 S.E. 2d 454, defendant dug a large hole in the ground, filled it with debris, covered the debris with soil, and built a house where the hole had been. He sold the house to plaintiffs without informing them that the house did not have a solid foundation. The court allowed plaintiffs to recover damages for fraud, stating:

> "Where material facts are accessible to the vendor only, and he knows them not to be within the reach of the diligent attention, observation and judgment of the purchaser,

the vendor is bound to disclose such facts, and make them known to the purchaser."

*Id.* at 217, 116 S.E. 2d at 457. Other cases in which the Supreme Court has granted relief for nondisclosure of material facts, or held that such relief would be available in appropriate circumstances, include *Setzer v. Insurance Co.,* 257 N.C. 396, 126 S.E. 2d 135; *Manufacturing Co. v. Taylor,* 230 N.C. 680, 55 S.E. 2d 311; *Lunn v. Shermer,* 93 N.C. 164; and *Brown v. Gray,* 51 N.C. 103. In addition, *see* Prosser, Torts, 4th, § 106, at 697. Courts of other states have held that a buyer or seller of stock may be guilty of actual fraud when he fails to disclose material facts affecting the value of the stock. *Neuman v. Corn Exch. Nat'l Bank & Trust Co.,* 356 Pa. 442, 51 A. 2d 759 (1947); *Chandler v. Butler,* 284 S.W. 2d 388 (Tex. Civ. App. 1955).

In the present case, if the allegations of defendants' "Third Defense" are taken as true, plaintiff knew that the financial condition of Onslow Livestock Corporation had deteriorated rapidly since he became president. Obviously this fact materially affected the value of the corporation's stock. Defendants were not aware of the corporation's poor financial condition, because plaintiff concealed it from them and failed to hold directors' meetings. When defendants purchased stock in the corporation from plaintiff, plaintiff did not inform them that the corporation was in financial difficulties, but instead told two of the defendants "that the business was a 'gold mine.'" In my judgment these allegations are sufficient to state a claim for relief on the ground of actual fraud.

In addition, defendants' "Third Defense," when construed in its best light for defendants, states a claim for relief on the ground of constructive fraud. When a corporate officer buys or sells stock in his corporation, while having knowledge of special facts which materially affect the value of the stock, he has a duty to disclose these special facts to the person with whom he is trading. When an officer realizes that a financial crisis is on the horizon, he may not use his position of trust for personal gain by selling his stock to an outsider for more than it is worth. While his position is not technically that of a fiduciary, he nevertheless stands in a special relation to his corporation and its stockholders, and he is required to be open and candid in his dealings with them. The violation of this duty is constructive fraud. *Strong v. Repide,* 213 U.S. 419 (1909); *Mansfield Hardwood Lumber Co. v. Johnson,* 263 F.

2d 748 (5th Cir.), *cert. denied*, 361 U.S. 885 (1959) ; *Oliver v. Oliver*, 118 Ga. 362, 45 S.E. 232 (1903) ; *Jacobson v. Yaschik*, 249 S.C. 577, 155 S.E. 2d 601 (1967) ; *Nichol v. Sensenbrenner*, 220 Wis. 165, 263 N.W. 650 (1936) ; Lattin, Corporations 2d, § 81, at 296-98; Robinson, N. C. Corp. Law, § 95. While Rule 10b-5 of the Securities and Exchange Commission is not applicable to the present case, it is based on the same principle. *See SEC v. Texas Gulf Sulphur Co.*, 401 F. 2d 833 (1968), *cert. denied*, 394 U.S. 976 (1969) ; *Speed v. Transamerica Corp.*, 99 F. Supp. 808 (D. Del. 1951).

I am of the opinion that there were issues of fact for determination and that the Superior Court should not have granted judgment on the pleadings.