GLENN W. BROOKS AND WIFE, DORIS S. BROOKS v.
ERVIN CONSTRUCTION COMPANY, A CORPORATION.

(Filed 19 October, 1960.)

**1. Sales § 6: Vendor and Purchaser § 9—**

The maxim *caveat emptor* does not apply in cases of fraud.

**2. Fraud § 3: Vendor and Purchaser § 25—**

Where material facts are accessible to the vendor only, and he knows
them not to be reasonably discoverable by a diligent purchaser, the
vendor is bound to disclose such facts, and in such instance *suppressio
veri* has the same legal effect as *suggestio falsi.*

**3. Election of Remedies § 1—**

Where the execution of a contract is procured by fraud, the party
defrauded may either rescind the contract for the fraud or affirm the
contract and sue for damages resulting from the fraud.

**4. Trial § 24a—**

On motion to nonsuit, plaintiffs' evidence is to be accepted as true
and considered in the light most favorable to them.

**5. Vendor and Purchaser § 25—**

Allegation and evidence to the effect that defendant sold plaintiffs
a house and lot, that the house was built over a large hole which had
been filled with debris, composed in part of partially burned tree stumps,
limbs, etc., that the debris had been covered with clay by defendant
so that the facts were not discoverable by plaintiffs in the exercise
of due dilligence, that defendant failed to disclose the facts in regard
to the condition of the lot, and that the house settled as a result of
being constructed on the filled land, resulting in material damage, *is
held* sufficient to make out a cause of action for fraud and deceit.

**6. Limitation of Actions § 7—**

The statute of limitations does not begin to run against a cause
of action for fraud until the discovery of fraud or the time it should
have been discovered in the exercise of reasonable diligence.

**7. Limitation of Actions § 18—**

Where defendant pleads the three year statute of limitations in plain-
tiffs' action for fraud, the introduction of evidence by plaintiffs tend-
ing to show that the action was instituted less than a year after
the discovery of the fraud and that the fraud was not discoverable in the
exercise of due diligence before that time, precludes nonsuit on the
ground of the bar of the statute, plaintiffs having assumed and carried
the burden of proof upon the issue. G.S. 1-52(9).

APPEAL by plaintiffs from *Crissman, J.,* 15 August 1960 Regular
Civil Term, Schedule A, of MECKLENBURG.

Civil action to recover compensatory and punitive damages for
fraud and deceit in the sale of a dwelling house and lot.

From a judgment of involuntary nonsuit entered at the close of plaintiffs' evidence, plaintiffs appeal.

*Richard M. Welling for plaintiffs, appellants.*
*McDougle, Ervin, Horack & Snepp for defendant, appellee.*

PARKER, J. Plaintiffs' evidence tends to show the following facts: Defendant construction company purchased and developed that certain development known as Markham Village, and particularly Lot 3, Block 22 of Markham Village, a lot known as 2415 Amesbury Avenue. In the spring of 1955 plaintiffs, who are husband and wife and have three children, were anxious to buy a home for immediate occupancy, because the house they rented had been sold, and they had received notice to vacate. They began negotiations with defendant for the purchase of a house and lot in Markham Village. Defendant showed them several completed houses in Markham Village, which they did not like. Then defendant showed them a vacant lot at 2415 Amesbury Avenue. It was a smooth lot. There was a pile of dirt in the right front of the lot about the size of a house. It looked like solid clay. There were no stumps or roots or anything to be seen on it. Defendant told them in substance that plans for a house to be built on this lot had already been approved by the Veterans' Administration for a GI prospective purchaser, whose credit did not check out, and the prospective sale was not consummated. Plaintiffs learned later this prospective purchaser was Marvin Jerome Bryant. Marvin Jerome Bryant refused to buy this lot and a house to be constructed on it by defendant on account of a huge hole dug on the lot. Marvin Jerome Bryant was never refused credit so far as he knows. Defendant told plaintiffs, "we can fix up for you real fast because it has already been approved by the Veterans' Administration, and will save you a lot of time." Defendant's salesman assured plaintiffs that defendant had an excellent reputation, and would build them a fine house, and build it properly in a workmanlike manner. The male plaintiff saw this lot several times after this, and never saw anything there that would lead him to believe that anything was wrong with the lot. It looked like a fine lot. Defendant never said anything to plaintiffs about the soil on the lot, and plaintiffs asked no questions in respect thereto, or as to whether the lot had been filled in.

On 16 May 1955 plaintiffs contracted in writing to purchase and defendant to sell for the price of $12,400.00 the lot known as 2415 Amesbury Avenue in Markham Village and a house to be built

thereon known as the Pinecrest Model by defendant according to plans and specifications approved by the Veterans' Administration. Title and possession of this house and lot were transferred and delivered to plaintiffs by deed dated 23 September 1955, and duly recorded. At the same time defendant gave plaintiffs a one-year written warranty of completion of the contract in conformity with approved plans and specifications of the Veterans' Administration.

Plaintiffs moved into their house on 29 September 1955. Three months later three doors in the house were not closing, the doors were binding at the top against the frame. Male plaintiff reported this to defendant, and it sent several men there, who placed a large beam propped up on 2 x 4s resting on one or two bricks under the living room and kitchen near the wall where the doors were not closing, and jacked up the floor level about one-half an inch. Whereupon the doors closed properly. After this the house continued to settle, the plaster therein began to crack, the nails in the walls started popping out of the plastering, a bulge appeared in the living room in the hall, and the cornice molding came loose. The floors were not solid and squeaked.

In February or March plaintiffs made an addition to their house, and when this was being done the male plaintiff saw the builder dig up some little pieces of wood and limbs in excavating two or three feet for a cement foundation.

Some time in 1958 or 1959 two neighbors of plaintiffs were standing near the corner of their house, and the male plaintiff was fussing about all the boards, logs and parts of bricks he was digging up in working in his yard. Whereupon one of these neighbors, Harold Murr, told him to go under his house and he would find a whole lot more. Immediately thereafter the male plaintiff got a shovel, went under the house, and dug a hole about seven or eight feet long and about four or five feet deep. In so digging, he dug out sticks, charcoal and little pieces of pine and plastering. It had rained the day before, and water began seeping in the hole. In two hours the hole was about two feet deep in water, and he stopped digging because he could not dig in water. When he had dug as much as five feet deep, he had never reached solid earth.

In 1955 before defendant showed plaintiffs the vacant lot at 2415 Amesbury Avenue, it had dug a hole in this lot with a bulldozer at least fifteen feet deep and about the width of a house, some fifty feet. In its development of this part of Markham Village, defendant had gathered in the street near this lot a pile of trees, stumps, limbs

and debris about fifty feet long and twenty feet high. Defendant set fire to this pile, and afterwards pushed what was left from the fire into the hole it had dug on the lot at 2415 Amesbury Avenue, and covered it up. Defendant built the house it sold to plaintiff centered over this filled up hole.

C. A. Waters, who has been in the business of building dwelling houses in the Charlotte area for 25 or 30 years, testified that the concrete footing of plaintiffs' house was resting at the front on filled dirt, and this is not good building practice, because a house continues to go down if it is built on disturbed soil. In the building trade fill dirt is disturbed soil. To prevent further sinking of plaintiff's house, one would have to go down until he got firm clay and pillar the house up, or else move the house off and put in a new foundation. On cross-examination he said he did not know if it is not common practice in the building trade to fill in land tamped down with a certain machine and build on it.

Plaintiffs instituted this action on 6 May 1959.

The maxim *caveat emptor* does not apply in cases of fraud. *Guy v. Bank,* 205 N.C. 357, 171 S.E. 341; *Smathers v. Gilmer,* 126 N.C. 757, 36 S.E. 153; *Walsh v. Hall,* 66 N.C. 233.

One of the fundamental tenets of the Anglo-American law of fraud is that fraud may be committed by a *suppressio veri* as well as by a *suggestio falsi.* 23 Am. Jur., Fraud and Deceit, p. 850.

This Court said in *Manufacturing Co. v. Taylor,* 230 N.C. 680, 55 S.E. 2d 311: "It is a practically universal rule, and it is the law in this State, that under circumstances which make it the duty of the seller to apprise the buyer of defects in the subject matter of the sale known to the seller but not to the buyer, *suppressio veri* is as much fraud as *suggestio falsi.*"

Where material facts are accessible to the vendor only, and he knows them not to be within the reach of the diligent attention, observation and judgment of the purchaser, the vendor is bound to disclose such facts, and make them known to the purchaser. *Farrar v. Churchill,* 135 U.S. 609, 34 L. Ed. 246; *Clauser v. Taylor,* 44 Cal. App. 2d 453, 112 P. 2d 661; 55 Am. Jur., Vendor and Purchaser, p. 532.

A party has the right either to rescind what has been done as a result of fraud, or affirm what has been done, and sue for damages caused by the fraud. *Amusement Co. v. Tarkington,* 247 N.C. 444, 101 S.E. 2d 398.

*Clauser v. Taylor, supra,* is a case very similar to the instant case. Defendant owned two residential lots. These lots, as defendant knew, had been filled with debris in 1928, which had been covered,

and the fact that the lots had been filled did not appear from a casual examination of the property. Due to the fact that the lots had been filled, the cost of bulding on them was materially increased. In 1940 plaintiff bought the lots. Plaintiff saw the lots, but made no inquiry as to whether they were filled or not, and neither defendant nor her agent made any representation concerning the lots. Upon discovering that the lots had been filled, plaintiff tendered to defendant a deed for them, and endeavored to rescind the transaction. The Court in affirming a judgment for plaintiff said: "It is the law that, where material facts are accessible to the vendor only and he knows them not to be within the reach of the diligent attention and observation of the vendee, the vendor is bound to disclose such facts to the vendee, and upon his failure to do so, the vendee may rescind the transaction upon discovering the true state of facts."

*Rothstein v. Janss Inv. Corp.*, 45 Cal. App. 2d 64, 113 P. 2d 465, was an action to recover damages for fraud in the sale of a lot which was represented as a solid lot without a fill. Later plaintiff discovered the lot had a fill of some 19 feet. The Court said: "Certainly, it may not be successfully contended that a fill to the depth of 19 feet is not a material factor in considering the purchase of a piece of real property. In so far as the purchase of a building lot for residential purposes is concerned, such a fill represents the difference between a piece of real estate and a hole in the ground."

In *Tatham v. Pattison*, 112 Cal. App. 2d 18, 245 P. 2d 668, the Court said: "It must be held that there is in the record substantial evidence to support a finding that appellant was aware of the fact that a portion of the land upon which the house was constructed was filled ground, which filling materially affected its value. That under the circumstances here present, appellant was under a duty to disclose that information to respondents. That he failed to do so, and in fact represented to respondents that there was no fill under the house. Upon learning the true state of facts, respondents therefore were entitled to rescind the contract."

*Weikel v. Sterns*, 142 Ky. 513, 134 S.W. 908, was an action to recover damages for deceit in the sale of property. The Court held that where defendant connected the sewer from his building with a pit in the rear thereof, and then built a residence over the pit and covered it with clay, the pit at that time being full of sewage up to about a foot below the level of the cellar of the residence, and sold the residence to plaintiffs, telling them nothing about the pit or sewer pipe, and plaintiffs were unable to get tenants to move in the house because of the odor, defendant was liable in damages.

Applying the foregoing rules to the facts of the instant case, plaintiffs' evidence, accepting it as true and considering it in the light most favorable to them as we are required to do in passing on a motion for judgment of involuntary nonsuit, *Smith v. Rawlins,* 253 N.C. 67, ...... S.E. 2d ......, tends to show that defendant dug a large hole on the lot at 2415 Amesbury Avenue, filled it with debris from a pile of trees, stumps, limbs and other things about fifty feet long and twenty feet high which it had burned, and then covered it over, and defendant without disclosing such facts to plaintiffs sold this lot to plaintiffs, and sold and constructed for them a house centered over this covered up hole, which filled in lot materially affected the value of the house and lot. Since this defect in the lot and the house built centered over it was not apparent to plaintiffs and not within the reach of their diligent attention and observation, defendant was under a duty to disclose this information to plaintiffs. Plaintiffs' evidence makes out a case of actionable fraud sufficient to carry the case to the jury.

Construing the complaint liberally with a view to substantial justice between the parties, G.S. 1-151, it alleges sufficient facts to constitute a cause of action for fraud and deceit.

Defendant contends that plaintiffs' action is barred by the three-year statute of limitations, G.S. 1-52(9), which statute of limitations is pleaded by defendant as a bar to plaintiffs' action.

This Court said in *Wimberly v. Furniture Stores,* 216 N.C. 732, 6 S.E. 2d 512: "The authorities are to the effect that, in an action grounded on fraud, the statute of limitations begins to run from the discovery of the fraud or from the time it should have been discovered in the exercise of reasonable diligence."

"Ordinarily, the bar of the statute of limitations is a mixed question of law and fact." *Currin v. Currin,* 219 N.C. 815, 15 S.E. 2d 279.

Tested by the above standard plaintiffs' evidence, accepting it as true and considering it in the light most favorable to them, tends to show that they did not discover the fraud until 1958 or the early part of 1959, and could not in the exercise of reasonable diligence have discovered it before that time, that they instituted this action on 6 May 1959, and that they have sustained the burden on them (*Solon Lodge v. Ionic Lodge,* 247 N.C. 310, 101 S.E. 2d 8), to show that the statute of limitations had not run against their cause of action. Therefore, it is not proper to grant a motion for judgment

of involuntary nonsuit on the ground that plaintiffs' action is barred by the three-year statute of limitations.

The motion for judgment of involuntary nonsuit was improvidently granted and is

Reversed.