WILBUR B. GOFF, JR., AND ELIZABETH M. GOFF v. FRANK A WARD REALTY AND INSURANCE COMPANY, INC., FRANK A. WARD, DAN WEAVER, CHARLES J. POCHE, AND JAMES T. HEDRICK, TRUSTEE

No. 7414SC56

(Filed 6 March 1974)

Fraud § 12— conveyance of property — septic tank problems — insufficient evidence of fraud

In an action to recover actual and punitive damages based upon alleged fraud on the part of defendants in the sale of a house and lot to plaintiffs, the trial court properly entered directed verdict for defendants where the evidence tended to show that the parties were dealing at arms length in the negotiation of the sale and purchase of the property, plaintiffs had full opportunity to view the topography of the lot in question and to see that it was lower than the lots adjoining on the north and west, plaintiffs had full opportunity to inquire of other residents of the area as to any septic tank problems in the area but they neglected to do so, and defendants resorted to no artifice which was calculated to induce plaintiffs to forego investigation.

APPEAL by plaintiffs from *Lanier, Judge,* 11 June 1973 Session of Superior Court held in DURHAM County.

In this action, plaintiffs seek to recover actual and punitive damages and other relief based upon alleged fraud on the part of defendants in the sale of a house and lot to plaintiffs. Pertinent allegations of the amended complaint, filed 13 May 1970, are summarized as follows:

On or about 6 June 1969, plaintiffs contracted to purchase from defendants Poche a house and lot on Pinafore Drive in the Westglen Subdivision in Durham County. At the time of negotiating and executing the contract, and at other times pertinent to this action, the corporate defendant, through its agents, defendants Ward and Weaver, was acting as sales agent for defendants Poche. The purchase price of the property was $37,500, $4,000 of which was financed by a note and second deed of trust to defendant Hedrick as trustee for defendants Poche. After closing the transaction and moving into the house, plaintiffs discovered that the property "had a long history of sewer and septic tank problems"; that in wet weather raw sewage from neighboring houses behind plaintiffs' property flows across plaintiffs' backyard and the resulting odor and slime rendered the backyard useless and constituted a serious health problem; that raw sewage sometimes bubbled up from plaintiffs' septic tank into their yard; and raw sewage from other houses flowed into a ditch in front of plaintiffs' house. Plaintiffs were advised and believed that all defendants, except defendant Hedrick, prior to and at the time of the sale, had knowledge of the existence of the septic tank and sewer problems relating to the subject property; that the misrepresentation and "fraudulent concealment" of said problems by defendants (except Hedrick) "were deliberately intended to deceive" plaintiffs and induced them to purchase the property. Plaintiffs prayed for actual and punitive damages, that foreclosure of the deed of trust be enjoined, and that the deed of trust and obligation secured thereby be discharged.

At the conclusion of plaintiffs' evidence, defendants' motion for directed verdict was allowed. From judgment entered thereon in favor of defendants, plaintiffs appeal, assigning as error the exclusion of certain evidence and the entry of judgment.

*John C. Randall and Eugene C. Brooks III for plaintiff appellants.*

*R. Roy Mitchell, Jr., Richard M. Hutson II, and J. Michael Correll for defendant appellees.*

BRITT, Judge.

Plaintiffs assign as error the allowance of defendants' motions for directed verdict. We hold that the trial court did not err in allowing the motion.

Evidence introduced by plaintiffs tended to show:

On or about 12 June 1968, defendants Poche purchased Lot No. 18 of Block C Extension of Westglen Subdivision, Section 3, in Durham County, and moved into the recently constructed house thereon. Said lot is located on the western side of Pinafore Drive and west of the lot are adjoining lots which front Cromwell Drive to their west. A Strauss family occupied the house on the lot immediately north of Lot 18 and a Person family occupied the house on a lot north of the Strauss residence. The lot south of No. 18 was vacant and the James Smith family occupied the house on the lot south of the vacant lot. At least two or three residences were located on the lots west of Lot 18, those residences facing Cromwell Road.

All of the residences in the area used individual septic tanks for disposal of waste. Lot No. 18 was topographically lower than the lots located on its north and west, and was lower on the back than on the front. The vacant lot on the south was slightly lower than No. 18. On the west side of Pinafore Drive, on the street right-of-way, was a ditch which ran in front of the Person, Strauss, Poche, vacant and Smith lots and crossed the road through a culvert near the Smith lot.

In late May of 1969, Mr. Poche's employer transferred him to New Orleans. He proceeded to list his home for sale with the corporate defendant after which he and Mrs. Poche went to New Orleans to locate a residence there. They returned to Durham the latter part of the first week in June. About that time, plaintiffs Goff were looking for a home in the Durham area and first saw the Poche property on or about 4 June 1969. The next morning, Mr. Goff was contacted by Mr. Wiley, an employee of Allenton Realty Company of Durham. On the same day, plaintiffs and Mr. Wiley visited the Poche property. On the next day, Mr. Goff requested Mr. Hessee, a partner of Comfort Engineers (Mr. Goff's employer) and a "lay engineer experienced in construction" to go with him and Mr. Wiley to inspect the Poche property. After looking under the house and in the yard, Mr. Hessee inquired of Mr. Wiley with respect to

any septic tank problems; Mr. Wiley replied that he knew of none but would check into it. Later that day, plaintiffs executed a purchase and sale agreement which defendants Poche had theretofore executed, and the transaction was closed on or about 15 July 1969. This constituted the fourth house plaintiffs had owned and they were familiar with homes requiring septic tanks.

Around 15 June 1969, Mr. Goff inquired of his realtor, Mr. Wiley, if he had learned of any septic tank or drainage problems on the Poche property. Mr. Wiley reported that he had talked with defendant Weaver and there were no such problems. Plaintiffs moved into their new home around 25 July 1969 and some time during September following, they noticed a foul odor coming from the ditch in front of the house. Around the last week in August of 1969, plaintiffs began having trouble with their septic tank.

Mr. Poche was called as a witness by plaintiffs. He testified that after moving into the house, he had a problem with surface water coming onto the back of his lot from adjoining lots. His testimony and that of witness Hallyburton tended to show that the problem was relieved by the cutting of a small ditch or drain across the back of the lot and on into a ditch that was cut on the vacant lot.

On recall, Mr. Goff testified that he first observed "drainage of septic material" coming down from the back of his lot in August and September of 1969; at that time he also noticed a substantial flow of surface water coming down from the higher lots.

James Smith testified that he was aware that sewage effluent ran down from the higher lots onto the Poche lot but he did not observe "sewage flowing from any of the houses in the back during the time the Poches lived in the house." Testimony of Mrs. Smith and others tended to show that septic tank effluent coming from the Strauss and Person houses ran down the road ditch while the Poches lived in the house.

Plaintiffs contend this case is controlled by *Brooks v. Construction Co.*, 253 N.C. 214, 116 S.E. 2d 454 (1960). Defendants contend it is controlled by *Childress v. Nordman*, 238 N.C. 708, 78 S.E. 2d 757 (1953) and *Calloway v. Wyatt*, 246 N.C. 129, 97 S.E. 2d 881 (1957). We agree with defendants' contention.

---

---

*Childress* involved the sale and purchase of a residence which defendants allegedly represented to be free of termites. The sales contract was executed on 10 September, the deed was executed on the following 15 October and termite damage was discovered by plaintiffs the last week in October. In reversing a judgment for plaintiffs, the court, in an opinion by Justice Ervin, said (pp. 712-713) : "When all is said, the testimony of Childress and Ivey merely shows the presence of termites in the dwelling during the last week of October, 1951. This being true, the case falls within the purview of the general rule that mere proof of the existence of a condition or state of facts at a given time does not raise an inference or presumption that the same condition or state of facts existed on a former occasion. (Citations.) This general rule is based on the sound concept that inferences or presumptions of fact do not ordinarily run backward. (Citations.)"

*Calloway* involved the sale and purchase of a residence and the evidence showed that prior to the sale the seller repeatedly represented that there was "plenty of water." The purchaser relied on the representation, purchased the property, and finding the water supply inadequate, brought action against the seller. The Supreme Court affirmed a judgment of nonsuit; we quote from the opinion by Justice (later Chief Justice) Parker (pp. 134-135) :

> " * * * When the parties deal at arms length and the purchaser has full opportunity to make inquiry but neglects to do so and the seller resorted to no artifice which was reasonably calculated to induce the purchaser to forego investigation action in deceit will not lie. *Cash Register Co. v. Townsend,* 137 N.C. 652; *May v. Loomis,* 140 N.C. 350; *Frey v. Lumber Co.,* 144 N.C. 759; *Tarault v. Seip,* 158 N.C. 369, 23 A.J., 981.
>
>       *      *      *
>
> "The right to rely on representations is inseparably connected with the correlative problem of the duty of a representee to use diligence in respect of representations made to him. The policy of the courts is, on the one hand, to suppress fraud and, on the other, not to encourage negligence and inattention to one's own interest."

In the negotiation of the sale and purchase of the subject property, the parties were dealing at arms length. Plaintiffs

had full opportunity to view the topography of the lot in question and to see that it was lower than the lots adjoining on the north and west. Plaintiffs had full opportunity to inquire of other residents of the area as to any septic tank problems in the area but they neglected to do so. Defendants resorted to no artifice which was calculated to induce plaintiffs to forego investigation. Hence, plaintiffs' action in deceit will not lie. *Calloway v. Wyatt, supra.*

We think *Brooks v. Construction Co., supra,* is clearly distinguishable from the instant case in many respects including the fact that the latent defect in *Brooks* was not only known to, but created by, the seller.

We have considered the other assignments of error brought forward and argued in plaintiffs' brief but find them without merit or, in view of our holding above, moot.

The judgment appealed from is

Affirmed.

Judges PARKER and VAUGHN concur.