ROBERT C. GUNTHER AND WIFE, SARAH GUNTHER v. WILLIAM E. PARKER AND WIFE, LOIS R. PARKER

No. 7528DC937

(Filed 5 May 1976)

**1. Fraud § 1— elements of actionable misrepresentation**

The complaint for actionable misrepresentation consists of (1) a representation of a material fact, (2) which was false, (3) which was either known to be so by the defendant when it was made or which was made recklessly without any knowledge of its truth, (4) which was intended to induce reliance, and (5) which did induce reasonable reliance, (6) reliance which resulted in injury to plaintiff.

**2. Fraud § 12— sale of house — misrepresentation of basement as "dry" — sufficiency of evidence**

In an action to recover damages sustained by plaintiffs when they bought defendants' home in reliance upon representations made by defendants that the basement of the home was "dry," evidence was sufficient to be submitted to the jury where it tended to show that plaintiffs received an affirmative response to their inquiry as to whether the basement was "dry," defendants had employed plumbers to make temporary repairs to a hopelessly defective sewer line system which had created a serious backflow into the basement, the plumbers' initial trench dug to probe for the sewer line was described to plaintiffs by defendants as merely an area suffering from soil erosion, and a list given plaintiffs by defendants recommending repairmen omitted the name of the very plumbing company which had responded to defendants' initial sewer problem several months prior to sale of the house to plaintiffs.

APPEAL by plaintiffs from *Styles, Judge*. Judgment entered 29 September 1975 in District Court, BUNCOMBE County. Heard in the Court of Appeals 11 March 1976.

In their complaint, filed 26 April 1973, plaintiffs alleged that "on the 22nd day of January 1973, the plaintiffs purchased from the defendants a house and lot . . . in the City of Asheville . . . for the sum of Fifty-seven Thousand Five Hundred and no/100 ($57,500.00) Dollars, which moneys were paid in full . . ." and maintained that defendants, prior to the purchase, ". . . represented to the plaintiffs and to the real estate broker . . . that the basement of said house was 'dry' and that no water had accumulated in the basement of said house during the defendants' ownership of same." The plaintiffs alleged, however, that, contrary to defendants' representation, the basement actually sustained considerable sewage and water backflow and that ". . . prior to their purchase . . . the sewer line,

Gunther v. Parker

or a portion thereof, had collapsed on October 7, 1972 causing water to back up into said basement and that the defendants were advised at that time by Moser, Inc., a local plumbing contractor, that the entire sewer line was badly deteriorated and needed to be replaced." Plaintiffs asserted that the defendants failed to heed the plumber's advice and instead ". . . effected temporary repairs . . . [and] did not replace or repair the deteriorated sewer line, nor did the defendants disclose to the plaintiffs the condition of said sewer line which was not visible to inspection and these plaintiffs . . . believe that such failure on the part of the defendants constituted a concealment of a material fact, the existence of which was peculiarly within the knowledge of said defendants in that said condition could not be discovered by a reasonable inspection."

Plaintiffs further allege that "surface waters had, prior to the date of their purchase . . ., also trespassed and accumulated in the basement . . . on numerous occasions, which fact was well known to the defendants at the time the aforesaid representations were made by the defendants to the plaintiffs."

Thus, plaintiffs charged that ". . . the defendants' representation that the basement . . . was 'dry' and that no water had accumulated in said basement of said house during the defendants' ownership was not true but was false and constituted a material misrepresentation wilfully made by the defendants to induce the plaintiffs to purchase said house and lot; that said defendants made said misrepresentation knowing same to be false with the intention of deceiving these plaintiffs and said plaintiffs reasonably relied upon said representations to their damage and injury."

More specifically, plaintiffs averred that after the purchase and

". . . during March of 1973 the sewer line leading from said house to the main sewer line collapsed and the basement of said house flooded with sewer water and sewer contents and these plaintiffs were required to completely replace said sewer line; that certain properties owned by the plaintiffs which were located in said basement were destroyed and had to be discarded; that in addition thereto considerable amounts of surface water from time to time . . . entered the plaintiffs' basement and these plaintiffs were therefore caused to make other repairs to prevent

such condition from re-occurring; that these plaintiffs, by virtue of the foregoing misrepresentations, have been damaged in the sum of One Thousand Eight Hundred ($1,800.00) Dollars."

Defendants, after unsuccessfully moving to dismiss the cause of action, answered, denying all of plaintiffs' substantive allegations.

At trial, plaintiff Dr. Robert Gunther testified that during pre-purchase inspection of the house his ". . . wife asked Mr. Parker if there had ever been any water in the basement, water problem in the basement. And Mr. Parker said 'yes, on one occasion there was because there are two downspouts at the end of the house that had either been plugged up or somehow not continuous from the roof into the ground, and under the ground. On that one occasion water had come in but that was corrected. And other than that, it was a dry basement.' "

Dr. Gunther further pointed out that during an inspection of the lot he noted ". . . an area on the bank, oh, maybe four or five feet down the bank, that was new fresh dirt. I asked Mr. Parker what it was. He replied to me that it was an area of erosion. This fresh dirt was located over the line of the sewer, from the house to the main line. No, during my inspection of the house and front portion of the house the sewer line was not visible to my eye. At that time I didn't know it was there. No, Mr. Parker did not make any statement or inform me or offer any information concerning the condition of that sewer line. The sewer line was never discussed. Yes, after I saw this fresh dirt and he made the statement in answer to my wife's question about no water accumulating in the basement, my wife and I decided to purchase the house."

Within five weeks of moving into the newly purchased house, the Gunthers purportedly experienced "difficulty with the sewer line." Dr. Gunther recalled that he ". . . went downstairs to the basement, I don't know what for, but when I got down there I found that there was sewerage coming out of that floor trap or drain. And at that point it was an area, maybe eight or ten feet wide, slowly extending across the basement. I recognized this as sewerage . . ."

Unable to reach the plumber listed on a recommendation list furnished and compiled for plaintiffs by the defendant sellers, the plaintiffs, after thumbing through the phone book,

called Moser Plumbing Comany, who immediately sent employee Sam Bass out to the house. Mr. Bass earlier had done plumbing work at the house for defendants and had been able then to clear the line temporarily. In March, Moser Plumbing returned to the site and replaced the entire sewer line for plaintiffs.

On cross-examination, plaintiff Dr. Gunther admitted that he ". . . never at any time asked Mr. Parker anything as to whether there had been any problem with the sewer line . . . [and he] did not hear . . . [his wife] ask him anything with respect to that."

Sam Bass, testifying for plaintiffs, stated that he, in fact, worked on the house on 8 October 1972 for the defendants, who, of course, then owned the home. Mr. Bass stated that during that October work session he advised the defendants that in his ". . . opinion the line was either broken or collapsed. . . ." Mr. Bass and a Company team returned to the site on 10 October 1972 and dug a small trench in the front of the house as an initial, unsuccessful attempt at locating the sewer line. Mr. Bass stated that his team, after locating the pipe, found it to be flattened, distorted, broken and composed of an inferior product and unsuccessfully recommended replacement with a better and more durable system.

Ostensibly, this initial probe trench was the fresh dirt patch noted by Dr. Gunther during his pre-purchase inspection. Mr. Bass stated that his crew never filled "that hole back up" after their October 1972 visit, but found during his March 1973 visit that the initial probe trench "had been covered up." On cross-examination, Mr. Bass explained that in October defendant William F. Parker told him ". . . he and someone would fill it back in."

Finally, plaintiff Sarah Gunther testified that she recalled

". . . asking Mr. Parker some questions as to the condition of the basement. I asked him the question on December 8. As to what question I asked him, I asked him if he'd ever had any water in his basement. His reply was no, then he explained about the downspouts. Yes, I was there when my husband was having a conversation as to a stain on the basement floor in the area of the drain in the basement. Well, just that he asked what the stain was from and Mr. Parker explained about cleaning the air filter. No, during the time that I was in the basement I did not see any evi-

dence of water accumulation or sewer backup on the basement floor. Yes, I went out and saw this area that Mr. Parker said was erosion on the bank, in the front of the house. To the best of my knowledge that was the same area that Mr. Bass was working in, I can't say for sure. Prior to the time that my husband and I agreed to purchase this house from Mr. and Mrs. Parker, neither of those two individuals made any statement as to the sewer line or any defects in the sewer line. No, I did not have any knowledge or reason to believe that the sewer line was defective in any way. Yes, I relied upon the statements the Parkers made in reaching a decision as to whether I wanted to buy the house."

At the close of plaintiffs' evidence defendants moved for a directed verdict. From order allowing the motion, plaintiffs appealed.

Other facts necessary for decision are set out in the opinion.

*Morris, Golding, Blue and Phillips, by J. N. Golding, for plaintiff appellants.*

*Dennis J. Winner for defendant appellees.*

MORRIS, Judge.

Plaintiff appellants contend that the trial court erred in granting defendants' motion for a directed verdict. We agree.

Judge Arnold, speaking for our Court in *Freeman v. Development Co.,* 25 N.C. App. 56, 59, 212 S.E. 2d 190 (1975), noted the general rule that "[i]n considering a motion for directed verdict, the court must view the evidence in the light most favorable to the non-moving party, giving to it the benefit of all reasonable inferences and resolving all inconsistencies in its favor. . . . The motion should be granted only if, as a matter of law, the evidence is insufficient to support a verdict for the non-movant." Stated differently, "[i]n determining whether a judgment directing verdict for the defendant may be sustained . . . [a]ll of the evidence which tends to support plaintiff's claim must be taken as true and considered in the light most favorable to plaintiff, giving him the benefit of every reasonable inference which legitimately may be drawn therefrom." *May v. Mitchell,* 9 N.C. App. 298, 300, 176 S.E. 2d 3 (1970).

Gunther v. Parker

Plaintiffs' case touches on various theories of fraud, deceit, concealment and misrepresentation, but ostensibly, mainly rests on the alleged misrepresentation of the basement's ability to withstand water inflows and the alleged concealment of circumstances which would have indicated that a serious problem existed.

[1] The complaint for "[a]ctionable misrepresentation consists of (1) a representation of a material fact, (2) which was false, (3) which was either known to be so by the defendant when it was made or which was made recklessly without any knowledge of its truth, (4) which was intended to induce reliance, and (5) which did induce reasonable reliance, (6) reliance which resulted in injury to plaintiff." *Austin v. Tire Treads, Inc.*, 21 N.C. App. 737, 739, 205 S.E. 2d 615 (1974). The plaintiffs' duty to prove falsity, furthermore, must be ". . . evaluated at the time . . . [the alleged] representation . . . [was] made or when it . . . [was] acted upon by the plaintiff." Id. at 740.

[2] Here plaintiffs' proof tended to meet the aforesaid requirements and indicated that defendants advised plaintiffs, upon inquiry, that the basement was "dry" but for one instance when water entered the homesite from broken or defective water downspouts. Plaintiffs' evidence, however, contradicted defendants' alleged representations, showing that defendants had engaged plumbers to render temporary repairs to a hopelessly defective sewer line system which had created a serious backflow into the basement. Plaintiffs also presented evidence tending to show that the plumbers' initial probe trench for the sewer line was described to plaintiffs as merely an area suffering from soil erosion. Finally, plaintiffs presented uncontradicted evidence that defendants' list of recommended repairmen omitted the name of the very plumbing company which had responded to defendants' initial sewer problem several months prior to the sale.

Taken in the light most favorable to plaintiffs, this evidence warranted a denial of defendants' motion for directed verdict. See: *Jenkins v. Hawthorne*, 269 N.C. 672, 153 S.E. 2d 339 (1967).

We are aware of this Court's opinion in *Goff v. Realty and Insurance Co.*, 21 N.C. App. 25, 203 S.E. 2d 65 (1974), cert. denied 285 N.C. 373 (1974), wherein the plaintiff buyer of a

home sued the seller for fraud when sewage from other homes standing on higher ground flowed into plaintiffs' property. Here, unlike *Goff,* the defendants, by failing to disclose upon inquiry the true nature of the dirt patch in the front of the house and in stating that the basement basically was "dry," created a situation such that a jury could find that they had "resorted to . . . artifice which was calculated to induce plaintiffs to forego investigation." Id. at 30.

The defendants' alleged actions, representations, omissions and concealments raise important questions of fact and infer strongly that defendants purposely misled plaintiffs. Every seller wants to present his property in the best possible light, but that must not be confused with the kind of behavior alleged by plaintiffs and inferred by their evidence. This is not technically a lawsuit for concealment or misrepresentation of a defective sewer system; it is an action for misrepresentation of a basement's condition and the related propriety of defendant's purported behavior. As to this problem, plaintiffs have presented sufficient evidence, in our opinion, to have the question submitted to the jury.

Reversed.

Judges HEDRICK and ARNOLD concur.