ROBERT D. CLOUSE AND WIFE, BARBARA A. CLOUSE, PLAINTIFFS v. WALTER L. GORDON, WALTER L. GORDON & ASSOCIATES, CYNTHIA J. FRENCH, NEW WORLD REAL ESTATE SERVICE (A DOMESTIC CORPORATION), RAYMOND D. PETTY, SR., DEFENDANTS

No. 9320SC653

(Filed 19 July 1994)

## 1. Vendor and Purchaser § 67 (NCI4th)— house in flood plain—no fraudulent concealment by homeowner

In an action arising from the sale of real estate where plaintiffs contended that defendant homeowner fraudulently concealed the fact that the property was subject to flooding, the trial court did not err in granting defendant homeowner's motion for judgment n.o.v. where the parties negotiated the contract for the sale of the property at arms length; plaintiffs had full opportunity to view the topography of the land, including the fact that a mall and a four-lane thoroughfare were located upstream from the creek on the property; plaintiffs had knowledge that a creek ran through the property; plaintiff wife testified that she had grown up near houses located in flood plains; plaintiffs had full opportunity to inquire of other residents whether there was a flooding problem; there was no evidence that the homeowner resorted to any artifice that was calculated to induce plaintiffs to forego investigation of the property; plaintiffs had an independent survey done of the property and there was no evidence that defendant homeowner interfered in any way; and the fact that the property was located in a flood plain was of public record.

**Am Jur 2d, Vendor and Purchaser § 554.**

**Fraud predicated on vendor's misrepresentation or concealment of danger or possibility of flooding or other unfavorable water conditions. 90 ALR3d 568.**

2. **Brokers and Factors § 61 (NCI4th)— sale of real property—no duty of selling agent to determine land in flood plain—no duty to inform purchasers**

> Defendant who was the selling agent for real property purchased by plaintiffs did not owe plaintiffs the duty to check federal flood hazard maps to determine whether the property was located in a flood hazard zone and, upon finding out that the property was located in such a zone, to inform plaintiffs that the property was located in a flood plain and that it would probably be subject to flooding, since there was no evidence that defendant actually knew this information; plaintiff's action was not based on any actual representation made by defendant; plaintiffs employed an independent surveyor to conduct a survey of the property, but defendant would have no reason to question the surveyor's representation that the property was not located in a special flood hazard zone; N.C.G.S. § 93A-6(a)(1) did not impose upon defendant a duty to conduct an independent survey of the federal flood hazard maps; and plaintiffs were represented by an attorney at the closing who should have conducted a title search which would have uncovered the fact that the property was located in a flood plain.

**Am Jur 2d, Brokers § 165.**

Appeal by plaintiffs from orders entered 2 March 1993 by Judge William H. Helms in Union County Superior Court. Heard in the Court of Appeals 9 March 1994.

This action arises out of a real estate transaction wherein Plaintiffs Robert and Barbara Clouse purchased realty located at 608 Sunnybrook Drive, Monroe, North Carolina, in December 1987. The seller of the property was Raymond D. Petty, Sr., and the selling agent was Cynthia J. French, an employee and agent of New World Real Estate Service. Further, Walter L. Gordon was a surveyor who prepared or caused to be prepared a survey of the property prior to plaintiffs purchasing the property.

Subsequently, in May or June, 1990, plaintiffs discovered that their property was located in a federally designated special flood hazard zone. Plaintiffs filed this action against Walter L. Gordon, Cynthia J. French and New World Real Estate alleging negligent conduct of Gordon and negligent or willful conduct of French and New World Real Estate in failing to disclose to plaintiffs a material fact concern-

ing the property. On 2 October 1991, plaintiffs filed an amended complaint to allege additional causes of action against Raymond Petty, Sr. for negligent and fraudulent conduct.

This action came on for trial, and on 19 January 1993, a jury returned a verdict finding that the plaintiffs were damaged by the negligence of Defendants Walter L. Gordon, Walter L. Gordon, Associates, and Cynthia J. French, and that plaintiffs were damaged by the fraud of Defendant Raymond D. Petty, Sr. Based on these findings, the jury found that plaintiffs were entitled to recover $25,000 in compensatory damages.

All defendants filed motions for judgments notwithstanding the verdict. Thereafter, Defendants Walter L. Gordon and Walter L. Gordon, Associates settled with plaintiffs out of court, and on 3 February 1993, plaintiffs voluntarily dismissed their claims against these two defendants. Subsequently, on 2 March 1993, Judge William H. Helms entered orders granting the motions for judgment notwithstanding the verdicts as to Defendants Petty, French, and New World Real Estate Service. From these orders, plaintiffs appeal.

*Franklin S. Hancock and Michael G. Gibson for plaintiffappellants.*

*W. David McSheehan for defendant-appellee Petty.*

*Cozen and O'Connor, by Michael L. Minsker and Eric J. Parham, for defendant-appellees French and New World Real Estate Service.*

ORR, Judge.

The issues before this Court are whether the trial court erred in (1) granting Defendant Petty's motion for judgment notwithstanding the verdict as to plaintiffs' claim for fraud against him, and (2) granting Defendants French's and New World Real Estate Service's motion for judgment notwithstanding the verdict as to plaintiffs' negligence claims against them. At the outset we note that during oral argument it was conceded that Defendant French was acting as an agent of New World Real Estate Service, and for the purposes of this appeal, we shall treat Defendant French and Defendant New World Real Estate Service as one defendant.

The evidence viewed in the light most favorable to plaintiffs showed that during July, 1987, Barbara Clouse and her husband Robert Clouse wanted to move from New Jersey to North Carolina.

CLOUSE v. GORDON

[115 N.C. App. 500 (1994)]

Subsequently, Mrs. Clouse contacted Defendant French, an agent of New World Real Estate Service, to help her find a house in North Carolina for the Clouses to purchase. Thereafter, while Mr. Clouse remained in New Jersey, Mrs. Clouse came to North Carolina, and French showed her the house and property owned by Defendant Petty located at 608 Sunnybrook Drive. While French was showing Mrs. Clouse this property, Mrs. Clouse had an opportunity to walk around the yard. Mrs. Clouse testified that as she was walking around the yard she noticed a creek located several hundred feet from the house. At this time, French did not inform Mrs. Clouse that the property was subject to flooding, and Mrs. Clouse did not inquire as to whether the property was subject to flooding.

The next day, French showed Mrs. Clouse the property again, and French helped Mrs. Clouse videotape the property to show Mr. Clouse. As they were videotaping the property, French testified that she answered some questions Mrs. Clouse had about the property, none of which concerned flooding. Further, French testified that she suggested to Mrs. Clouse at that time that she should have a survey and termite inspection done for the property and the house. The next day, Mrs. Clouse returned to New Jersey.

Thereafter, French and Mrs. Clouse were in contact over the phone about the property. After talking to the listing agent, French informed the Clouses that the property actually consisted of two lots instead of one and that the creek was on one of the lots. Eventually French and plaintiffs reached an agreement, and French prepared, and the Clouses signed, a contract for the sale of the property. French testified that she never did anything to prevent the Clouses from making a full and thorough investigation of the property.

Prior to the closing, French testified that she suggested to Mrs. Clouse again that she have a survey of the property done. Subsequently, French testified that Mrs. Clouse authorized her to have a survey done, and French contacted Walter Gordon, a registered land surveyor, to perform the survey of the property. Gordon performed such survey and prepared a map of the property on which he stated, "I have consulted the Federal Emergency Management Agency Flood map and determined the property shown is not in a special flood hazard zone." Additionally, the map prepared by Gordon did not show a creek on or near the property.

The closing was held on 11 December 1987. At the closing, French saw the survey map prepared by Gordon for the first time and noticed

that it did not show a creek. French informed Mr. Clouse that the survey was incorrect in that it did not show the creek and pointed out to Mr. Clouse where the creek should have been drawn. The Clouses were represented by an attorney at the closing. They concluded the purchase of the property for $74,400.

In June, 1990, Margaret Damon Desio, a real estate appraiser with Carolina Appraisal Company, was hired to do a mortgage appraisal on the property. In conducting such appraisal, Desio consulted federal flood maps and discovered that there was a flood plain on Sunnybrook. Desio testified that she determined that the lot containing the creek, Lot 51, was located in the flood plain but that it was unclear whether the lot containing the house, Lot 52, was in the flood plain. Thereafter, plaintiffs employed another surveyor to survey the property. The new survey showed that almost all of Lot 51 was contained in the flood plain and that a portion of Lot 52 was in the flood plain, including a part of plaintiffs' front and back yard.

Further, plaintiffs produced evidence tending to show that since they purchased the property, during heavy rain, the creek would overflow and flood their yard. Mrs. Clouse testified that during Hurricane Hugo, part of her house was flooded. A witness who lived near the property testified that between 1979 and 1982, when Petty owned the property, the creek flooded up and over the road approximately seven or eight times. Additionally, the evidence showed that the property is located downstream from a four-lane thoroughfare and the Monroe Mall, which mall has a large asphalt-covered parking lot, and that the drainage from this road and parking lot empties into this creek. The evidence also showed that Defendant French lived down the street from the property.

On the issue of damages, Mr. Clouse testified that the actual value of the property on the date of purchase, taking into consideration that it was located in a flood plain and subject to flooding, was thirty thousand dollars or less. Mrs. Clouse testified that the value of the property on the date of purchase, taking the flooding into account, was forty thousand dollars. Further, the Clouses testified that they would not have bought the property if they had known that it was located in a flood plain and subject to flooding.

I.

[1] On appeal, plaintiffs contend that the trial court erred in granting Defendant Petty's motion for judgment notwithstanding the verdict as to plaintiffs' claim for fraud against him. We disagree.

When passing on a motion for judgment notwithstanding the verdict, the same standards applicable to a motion for directed verdict are to be applied. Thus, the court must consider the evidence in the light most favorable to the plaintiff and may grant the motion only if, as a matter of law, the evidence is insufficient to support a verdict for plaintiff.

*Brokers, Inc. v. High Point City Bd. of Educ.*, 33 N.C. App. 24, 28, 234 S.E.2d 56, 59, *disc. review denied*, 293 N.C. 159, 236 S.E.2d 702 (1977) (citation omitted).

In the present case, Petty owned the property plaintiffs purchased, and plaintiffs alleged that Petty fraudulently concealed the fact from plaintiffs that the property was subject to flooding. On appeal, plaintiffs contend that sufficient evidence exists to support every element of their fraud claim and that the trial court erred in granting Petty's motion for judgment notwithstanding the verdict as to this claim. Because we find that *Goff v. Frank A. Ward Realty and Ins. Co., Inc.*, 21 N.C. App. 25, 203 S.E.2d 65, *cert. denied*, 285 N.C. 373, 205 S.E.2d 97 (1974) is controlling, we disagree.

In *Goff*, plaintiffs contracted to purchase a house from Charles J. Poche for $37,500. This house was located on a lot that was topographically lower than the lots located on its north and west, and was lower on the back than on the front. At the time of negotiating and executing the contract, Ward Realty and Insurance Company, Inc., through its agents, acted as sales agent for Poche. After plaintiffs closed on the transaction and moved into the house, they

> discovered that the property "had a long history of sewer and septic tank problems"; that in wet weather raw sewage from neighboring houses behind plaintiffs' property flows across plaintiffs' backyard and the resulting odor and slime rendered the backyard useless and constituted a serious health problem; that raw sewage sometimes bubbled up from plaintiffs' septic tank into their yard; and raw sewage from other houses flowed into a ditch in front of plaintiffs' house.

*Id.* at 26, 203 S.E.2d at 66. Subsequently, plaintiffs filed a complaint against Ward Realty and Insurance Company, Inc. and Poche alleging that these defendants fraudulently concealed the fact that this property had sewer problems and sought actual and punitive damages for this fraud. At the close of plaintiffs' evidence, defendants

moved for a directed verdict, which motion the trial court granted. Plaintiffs appealed to this Court.

This Court stated the applicable law:

" * * * When the parties deal at arms length and the purchaser has full opportunity to make inquiry but neglects to do so and the seller resorted to no artifice which was reasonably calculated to induce the purchaser to forego investigation action in deceit will not lie.["] . . .

* * *

"The right to rely on representations is inseparably connected with the correlative problem of the duty of a representee to use diligence in respect of representations made to him. The policy of the courts is, on the one hand, to suppress fraud and, on the other, not to encourage negligence and inattention to one's own interest."

*Id.* at 29, 203 S.E.2d at 68 (citations omitted).

Thereafter, this Court concluded:

In the negotiation of the sale and purchase of the subject property, the parties were dealing at arms length. Plaintiffs had full opportunity to view the topography of the lot in question and to see that it was lower than the lots adjoining on the north and west. Plaintiffs had full opportunity to inquire of other residents of the area as to any septic tank problems in the area but they neglected to do so. Defendants resorted to no artifice which was calculated to induce plaintiffs to forego investigation. Hence, plaintiffs' action in deceit will not lie.

*Id.* at 29-30, 203 S.E.2d at 68. Based on these conclusions, this Court affirmed the trial court's granting of defendants' directed verdict motions.

In the present case, plaintiffs contend that Petty fraudulently concealed the fact that the property was subject to flooding and that this fraud injured plaintiffs. Like the parties in *Goff*, however, the parties in the present case negotiated the contract for the sale of the property at arms length. Plaintiffs had full opportunity to view the topography of the land, including the fact that a mall and a four-lane thoroughfare were located upstream from the creek on the property. Further, plaintiffs had knowledge that a creek ran through the prop-

erty, and Plaintiff Barbara Clouse testified that she grew up near houses located in flood plains in New Jersey. Further, plaintiffs had full opportunity to inquire of other residents whether there was a flooding problem.

The record contains no evidence that Petty resorted to any artifice that was calculated to induce plaintiffs to forego investigation of the property. In fact, plaintiffs had an independent survey done of the property, and the record is void of any evidence that Petty interfered in any way with this survey. In addition, the fact that the property was located in a flood plain was of public record, thus plaintiffs were not precluded from discovering this fact.

> Ordinarily, in the absence of inquiry by the vendors, the purchaser is not under a duty to disclose facts materially affecting the value of the property when no fiduciary relationship exists between them, certainly when such facts are a matter of public record, and the purchaser does not, by word or deed, divert a full investigation by the vendors.[] Thus, a purchaser of real estate cannot maintain an action for fraud for misrepresentations concerning the value of the property or its condition and adaptability to particular uses when the purchaser has an opportunity to make full investigation and is not induced to forego investigation by artifice or fraud on the part of the seller.[]

*Strong's North Carolina Index 4th*, vol. 29, Vendor and Purchaser § 65 (1994) (emphasis added) (footnotes omitted); *But see Brooks v. Ervin Construction Co.*, 253 N.C. 214, 116 S.E.2d 454 (1960) (where purchaser of lot and house could sue seller of the lot for fraud when the seller knew the house was constructed over a ditch filled with refuse and trash and this defect was not apparent to plaintiffs and not within the reach of their diligent attention and observation).

Thus, we conclude that under the facts of this case, plaintiffs cannot maintain an action for fraud against Petty. Accordingly, we find that the trial court did not err in granting Petty's motion for judgment notwithstanding the verdict.

## II.

Plaintiffs also contend that the trial court erred in granting Defendant French's motion for judgment notwithstanding the verdict. We disagree.

**[2]**  Plaintiffs' claim against French was for negligence. In order to withstand a motion for judgment notwithstanding a verdict as to this claim, the evidence, viewed in the light most favorable to plaintiffs, must be sufficient to support every element of the negligence claim. "To establish a *prima facie* case of negligence, plaintiff must put on evidence that defendant had a duty to conform to a certain standard of conduct, that defendant breached that duty, that plaintiff was injured, and that plaintiff's injury was proximately caused by the breach." *Simpson v. Cotton*, 98 N.C. App. 209, 211, 390 S.E.2d 345, 346 (1990).

In the case *sub judice*, French was the selling agent for the real property purchased by plaintiffs. Plaintiffs contend that under the facts of this case, French owed plaintiffs the duty of checking the federal flood hazard maps to determine whether the property was located in a flood hazard zone and that upon finding out that the property was located in such a zone, French had the duty to inform plaintiffs that the property was located in a flood plain and that it would probably be subject to flooding.

It is well-settled that

> "[a] broker who makes fraudulent misrepresentations or *who conceals a material fact* when there is a duty to speak to a prospective purchaser in connection with the sale of the principal's property is personally liable to the purchaser notwithstanding that the broker was acting in the capacity of agent for the seller."

*Johnson v. Beverly-Hanks & Assoc., Inc.*, 328 N.C. 202, 210, 400 S.E.2d 38, 43 (1991) (emphasis in original) (quoting P. Hetrick & J. McLaughlin, *Webster's Real Estate Law in North Carolina* § 132, at 165 (3d ed. 1988)). Further, "[a] broker has a duty not to conceal from the purchasers any material facts and to make full and open disclosure of all such information." *Id.* This duty applies, however, to material facts known to the broker and to representations made by the broker.

In the present case, plaintiffs do not contend, and the record contains no evidence that, French actually knew the property was located in the flood hazard zone or that the property was subject to flooding. Further, during oral argument, plaintiffs conceded that their action against French is not based on any actual representation made by French. Instead, the alleged negligence of French is based on

French's failure to search the federal flood hazard maps to determine whether the property was located in a flood plain and to inform plaintiffs if she found that the property was located in such plain.

Plaintiffs have not cited, and we find no support for, the proposition that a selling agent for real estate owes a duty to the purchaser of that real estate to search flood hazard maps to determine whether the property she is selling is located in a flood plain. As we have already stated, it is the policy of the courts not to encourage negligence and inattention to one's own interest. *See Goff*, 21 N.C. App. at 29, 203 S.E.2d at 68. The purchaser is under some duty to insure that their interests are preserved.

Additionally, the plaintiffs employed Walter L. Gordon, an independent surveyor, to conduct a survey of the property. Gordon represented to plaintiffs that he had consulted the Federal Emergency Management Agency Flood map and determined that the property was not located in a special flood hazard zone. French, as a real estate agent, would have no reason to question Gordon's affirmative representation and make her own independent investigation when Gordon's expertise was specifically in the area of conducting surveys and when he was paid to specifically conduct such survey. Further, French would have no reason to believe she needed to conduct an independent search of the flood hazard maps in light of the fact that plaintiffs were represented by an attorney at the closing, and an attorney representing the buyer at a closing is normally expected to have conducted a title search of the property, which search would have presumably uncovered the fact that the property was located in a flood plain.

Plaintiffs contend, however, that N.C. Gen. Stat. § 93A-6(a)(1) imposed a duty on French to conduct an independent survey of the federal flood hazard maps. We disagree. N.C. Gen. Stat. § 93A-6(a)(1) states that the Real Estate Commission has the power to suspend or revoke a real estate license issued under Chapter 93A of the General Statutes if the Commission finds that the licensee is guilty of "[m]aking any willful or negligent misrepresentation or any willful or negligent omission of material fact . . . ." As already stated, plaintiffs do not allege that French made a willful or negligent misrepresentation or that she made a willful omission.

Additionally, the law is such that "mere inaction does not constitute negligence in the absence of a duty to act." 65 C.J.S. Negligence § 18 (footnote omitted). Thus, as we have held that French was under no duty to search the federal flood hazard maps, the fact that she did

not search these maps, discover that the property was located in a flood plain, and inform plaintiffs could not constitute a "negligent omission." Plaintiffs' argument is without merit.

Plaintiffs also contend, however, that French knew that the survey made by Gordon was wrong and thus a duty was imposed on French to conduct an independent investigation of the property as to whether it was located in a flood plain. Plaintiffs base their allegation that French knew the survey was wrong on the fact that the survey did not show that a creek ran through the property. We do not find that the fact that the survey did not include the creek created a duty in French to conduct an independent search of the federal flood hazard maps, especially in light of the facts that plaintiffs were represented by an attorney at the closing and French informed plaintiffs at the closing that the survey should have shown the creek running through the property. Plaintiffs' argument is without merit.

Accordingly, we conclude that under these facts, French was not under the duty to search the federal flood hazard maps to determine whether the property was located in a flood plain and affirm the trial court's granting of French's motion for judgment notwithstanding the verdict.

Affirmed.

Judge WELLS concurred prior to 30 June 1994.

Judge WYNN concurs in the result only.